**Jeffrey B. PINE, in his capacity as Attorney General**

v.

**Sidney CLARK.**

**No. 93-514-M.P.**

Supreme Court of Rhode Island.

Feb. 1, 1994.

Jeffrey Pine, Atty. Gen., Thomas Dickinson, Deputy Atty. Gen., Aaron Weisman, Asst. Atty. Gen., for plaintiff.

Richard Casparian, Public Defender, Barbara Hurst, Asst. Public Defender, Edward L. Gerstein, Little Compton, for defendant.

## OPINION

MURRAY, Justice.

This matter came before this court on the petition of the defendant, Sidney Clark (Clark), for certiorari. The defendant seeks review of a Superior Court order that reversed the decision of the Parole Board (board) that he be released on parole. The plaintiff, Jeffrey B. Pine, the State's Attorney General (Attorney General), had appealed the board's decision, purportedly under the authority of a section of the Administrative Procedures Act (APA), G.L.1956 (1993 Reenactment) § 42–35–15. We now reverse the judgment of the Superior Court.

The parties did not order transcripts of the Superior Court hearing in this matter. Therefore, we have gleaned the following summary of the facts from the judgment of the Superior Court, other portions of the record, and other cases in which defendant was involved.

Clark has a long and tortuous history in the criminal-justice system, which includes the following events. He was convicted of raping a female college student in 1969. *See State v. Clark,* 112 R.I. 270, 271, 308 A.2d 792, 793 (1973) *(Clark I ).* This court affirmed his conviction in 1973. *See id.* at 275, 308 A.2d at 795. While serving his fifteen-year sentence on that charge in the Adult Correctional Institutions (ACI), Clark was found guilty in 1975 of second-degree murder in connection with the stabbing of a fellow inmate. *See State v. Clark,* 423 A.2d 1151, 1153 (R.I.1980) *(Clark II), habeas corpus denied sub nom. Clark v. Moran,* 749 F.Supp. 1186 (D.R.I.1990), *aff'd,* 942 F.2d 24 (1st Cir. 1991). In 1976, the trial justice sentenced Clark to death pursuant to the provisions of G.L.1956 (1969 Reenactment) § 11–23–2, as amended by P.L.1973, ch. 280, § 1. *Clark II,* 423 A.2d at 1153.

Also in 1976, Clark attempted to escape from the ACI and ultimately pleaded guilty to conspiracy to escape and attempted escape; he was sentenced to "one year consecutive." On February 19, 1979, this court held the death-penalty provision of § 11–23–2 violative of the Eighth Amendment's ban on cruel and unusual punishment. *See State v. Cline,* 121 R.I. 299, 303–04, 397 A.2d 1309, 1311 (1979); U.S. Const. Amend. VIII. Subsequently, this court granted Clark's motion to remand his case to the Superior Court for resentencing, *see State v. Clark,* 401 A.2d 1305 (R.I.1979) (mem.), and in October 1979 he received a life sentence. *See Clark II,* 423 A.2d at 1153.

In August 1985 the Rhode Island Department of Corrections (DOC) decided that Clark was eligible for parole on the murder conviction. He appeared before the board semiannually, and in November 1988, the board granted him parole as of January 1992, contingent on excellent institutional behavior. Clark was released on parole from the work-

release unit, but in December 1992 a detention warrant was issued and Clark was recommitted to the ACI in January 1993, apparently for failure of a drug-screening test.

In March 1993 the board voted to rescind the detention warrant and rerelease Clark on parole in June 1993 to the home-confinement program, to be closely supervised. In response to a request by the Attorney General, the board held a hearing on Clark's eligibility and decided to review his status in June because of an allegation that he had committed a disciplinary infraction. The board considered the objections that the Attorney General submitted regarding Clark's upcoming release and also heard arguments from Clark's attorneys. The following entry regarding Clark appears in an addendum to the minutes of the board meeting of May 27, 1993:

> "After careful review of the arguments and legal memoranda, the Board voted unanimously to deny the Attorney General's objection.
>
> "The Board carefully reviewed questions the Attorney General raised regarding parole procedures and the Board believes these issues should be addressed in the appropriate form. [sic]
>
> "The Board is also aware of an alleged institutional infraction by Mr. Clark and this will be addressed by the Board prior to his release."

The Attorney General filed his complaint, styled an administrative appeal, in the Superior Court on June 16, 1993, seeking reversal of the board's decision and an order denying Clark parole, among other things. The board reviewed Clark's status after finding that he was not guilty in the disciplinary proceeding and on June 17, 1993, decided to rerelease him to home confinement.

The Attorney General filed a motion to stay Clark's release on parole pending the outcome of the appeal. After hearing arguments, the motion justice denied the stay on July 19, 1993. The same justice heard arguments on the merits of the appeal on September 22, 1993 and, a week later, filed his decision reversing the board. The hearing justice found that the board's decision to release Clark violated G.L.1956 (1981 Reen-

actment) § 13–8–13, which delineates parole eligibility for life prisoners and prisoners with long sentences. *See* § 13–8–13. He ordered that Clark be apprehended and confined to the ACI "until such time as he qualifies for release after serving his full sentence, or until such time as he is eligible to be considered for parole, only after he has served not less than twenty-five years [of] imprisonment."

In Clark's petition to this court, he raises numerous substantive and procedural arguments in support of his position that the Superior Court judgment should be reversed, including the following assertions. He argues that § 13–8–13 does not apply to him because he was not sentenced to life imprisonment on the date of his conviction for attempted escape. He further contends that even if it did apply, the retroactive application of the statute to invalidate a parole classification that was made eight years before would violate his due-process rights. He also claims that the Superior Court lacked jurisdiction over this case for several reasons: (1) no administrative appeal lies under § 42–35–15 to review the board's decision in an individual case, (2) the complaint was not filed within thirty days of any decision of the board addressing Clark's eligibility for parole, and (3) the complaint failed to join indispensable parties. Finally, he asserts two equitable arguments: (1) that the Attorney General waived any legal challenge to Clark's parole eligibility by failing to challenge parole until Clark's second release on parole was imminent and (2) that the Attorney General is barred by laches.

■ A challenge to subject-matter jurisdiction questions the very power of the court to hear the case. It is an axiomatic rule of civil procedure that such a claim may not be waived by any party and may be raised at any time in the proceedings. *See La Petite Auberge, Inc. v. Rhode Island Commission for Human Rights*, 419 A.2d 274, 280 (R.I. 1980); Super.R.Civ.P. 12(b) & (h). Therefore, because Clark has challenged the subject-matter jurisdiction, that is, the power of the Superior Court to hear the Attor-

General's appeal from the board, we address this threshold inquiry first.

The most significant challenge that Clark levels against the Superior Court's exercise of jurisdiction is that § 42–35–15 did not empower the Superior Court to entertain the Attorney General's purported administrative appeal from the board's decision. Section 42–35–15(a) provides as follows:

"Any person who has exhausted all administrative remedies available to him [or her] within the agency, and who is *aggrieved by a final order in a contested case* is entitled to judicial review under this chapter. This section does not limit utilization of or the scope of judicial review available under other means of review, redress, relief, or trial de novo provided by law. Any preliminary, procedural, or intermediate agency act or ruling is immediately reviewable in any case in which review of the final agency order would not provide an adequate remedy." (Emphasis added.)

This section is part of the APA, §§ 42–35–1 to 42–35–18. The APA defines a "contested case" as "a proceeding, including but not restricted to ratemaking, price fixing, and licensing, in which the legal rights, duties, or privileges of a specific party are required by law to be determined by an agency after an opportunity for hearing[.]" *See* § 42–35–1(c). "Agency" includes all authorities and every state board, commission, department, or officer "authorized by law to make rules or to determine contested cases," except the Legislature or the courts. Section 42–35–1(a).

The final section of the APA specifically excludes certain entities from either some or all of its provisions. *See* § 42–35–18. Section 42–35–18(c)(3) exempts chapter 8 of title 13, the chapter governing parole, from the application of §§ 42–35–9 to 42–35–13 of the APA. Specifically, § 42–35–9 prescribes procedures required with regard to notice, a hearing, and records in contested cases; §§ 42–35–10 to 42–35–13 address other matters pertinent to contested cases, including the applicability of the rules of evidence, the examination of evidence by the agency, the requirement that final orders adverse to parties be in writing or stated in the record, and the proscription of most ex parte communications by members or employees of an agency assigned to render an order or make findings of fact and conclusions of law in a contested case. The board is not explicitly exempted from § 42–35–15, which authorizes judicial review in contested cases. *See* § 42–35–18(c)(3).

The hearing justice concluded that the Superior Court had jurisdiction to review board decisions under § 42–35–15. He reasoned that the board is an agency authorized by law to make rules or determine cases and that consideration of parole before the board is a proceeding in which a defendant's legal rights or status is to be determined; therefore, he concluded, this matter is a contested case. He also pointed out that this court has stated that the board is not completely immune from judicial review. *See State v. Ouimette,* 117 R.I. 361, 371, 367 A.2d 704, 710 (1976).

■ Clark argues that no administrative appeal lies under that section for judicial review of a board decision in an individual case. He asserts that the proceeding from which the Attorney General appealed concerned whether the board should reconsider its decision to rescind its warrant and rerelease him. Applying the APA's definition of contested case, Clark claims that in such a proceeding the board is not "required by law" to grant "an opportunity for hearing" to anyone. Since § 42–35–15 provides for judicial review of contested cases and this is not a contested case, he avers, no judicial review is available under that section.

Clark clarifies that he is not challenging the right of the Attorney General to seek review of issues of law; rather, he contests the Attorney General's right to use the APA to obtain judicial review of board decisions in individual cases. He points out that the APA provides a means by which the Attorney General could seek declaratory judgment regarding the applicability or validity of any rule made by a governmental agency. He also suggests that the Attorney General could seek an advisory opinion from this court.

Clark further asserts that Rhode Island law does not grant a right of hearing preceding any board action. With regard to the APA, the board is exempt from § 42–35–9, the provision requiring hearings in contested cases. Under the parole statute, the board can grant parole without a hearing and is authorized by § 13–8–18 to revoke a parole permit with or without a hearing. Clark points out that this court has held that constitutional due process requires a hearing before the revocation of parole but argues that the board is not required to hold a hearing when deciding not to rescind parole. Even though the parole statute provides for the right of input by the parole applicant, Clark contends, the provision confers only the right to submit a written statement, not to have a hearing.

The Attorney General frames this issue as a question of whether the Superior Court properly recognized his right to appeal Clark's parole release under the APA. He acknowledges that prosecutorial objections to grants of parole are "rare." He argues, however, that whereas the General Assembly exempted the board from certain provisions of the APA, it chose not to exempt the board from the judicial-review section. He further asserts that, if the General Assembly had intended to exempt the board from the judicial-review provision, it would have done so explicitly. He claims that the board clearly falls under the APA's definition of "agency"; he also argues that the board's consideration of Clark's "parole status is clearly a proceeding in which legal rights or status [is] determined" and therefore is a "contested case."

The Attorney General also contends that the General Assembly seems to have exempted the board from the "generic provisions" of the APA relative to issues for which the board has specific statutory requirements. He claims that therefore the general APA provision regarding notice is inapplicable to the board because the board's statute contains a specific notice provision.

We should be clear regarding which board decision we address. The Attorney General claims he has a right to appeal Clark's parole release under the APA. We therefore direct our attention and analysis to that contention.

The board concluded that Clark was eligible for parole in 1985; in 1988 the board decided to release Clark on parole as of 1992. Clark was released on parole but approximately a year later he was recommitted to the ACI after the issuance of a detention warrant for failure of a drug-screening test. The board then voted to rescind the detention warrant and to rerelease Clark on parole. The board held a hearing on Clark's eligibility in response to the Attorney General's request and subsequently denied his objections to Clark's release. We do not have a record of those board proceedings other than those excerpts from the board minutes that the parties have submitted for our review. An addendum to the board-meeting minutes of May 27, 1993, contains the following entry:

"In the matter of Sidney A. Clark the Rhode Island Parole Board considered the objections of the Attorney General to release Mr. Clark in June. The Board also heard arguments from Mr. Clark's attorneys.

"After careful review of the arguments and legal memoranda, the Board voted unanimously to deny the Attorney General's objection.

"The Board carefully reviewed questions the Attorney General raised regarding parole procedures and the Board believes these issues should be addressed in the appropriate form. [sic]

"The Board is also aware of an alleged institutional infraction by Mr. Clark and this will be addressed by the Board prior to his release."

The Superior Court hearing justice wrote, "The May 27, 1993 decision is precisely the type of ultimate order that is appealable" under § 42–35–15 and concluded that all other board actions were preliminary, procedural, or intermediate.

The board is a division of DOC and consists of seven members who possess certain qualifications and are appointed by the Governor. See § 13–8–1. In the case of any prisoner whose sentence is within the board's control, with certain exceptions, the board "may by an affirmative vote of a majority of the members of the board, issue to such [a]

prisoner a permit to be at liberty upon parole," whenever such a prisoner has served at least one-third of the term for which he or she was sentenced. Section 13–8–9. The board's control over a sentence is triggered if a convicted person is sentenced to imprisonment in the ACI for more than six months. *See* § 13–8–8. Special provisions, however, govern parole for prisoners subject to more than one sentence, life sentences, or lengthy sentences and for "habitual criminals." *See* §§ 13–8–9, 13–8–10, 13–8–13, and 12–19–21. Certain criteria and standards guide the board's parole decisions. *See* §§ 13–8–14, 13–8–14.1.

We emphasize that the parole statute mandates that the Attorney General's department supply the board with "a written report of its recommendation concerning the current application for parole." *See* § 13–8–23(c). The report is required to detail the reasons the inmate should or should not be paroled given the individual's criminal history and the circumstances surrounding the offense. *See id.*

The granting of parole to a particular prisoner is discretionary, within certain constraints. Section 13–8–22 provides in pertinent part:

"The parole board in the discharge of its duties under this chapter shall not be required to receive or consider any petition, and it may secure the information upon which it exercises its authority, or upon which it makes its findings in any case, in such manner and by such means as it may consider most fitting to carry out the purposes of this chapter * * *"

Furthermore, the United States Supreme Court has stated that "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *See Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex,* 442 U.S. 1, 7, 99 S.Ct. 2100, 2104, 60 L.Ed.2d 668, 675 (1979). The Court also noted the absence of a "constitutional guarantee that all executive decision-making must comply with standards that assure error-free determinations," especially "with respect to the sensitive choices pre-sented by the administrative decision to grant parole release." *See id.*

The parole statute nowhere requires a hearing to precede the board's grant of parole to an inmate. The Attorney General does not contend that it does. He argues that the board's consideration of Clark's parole status is a proceeding in which legal rights or status is determined. We do not disagree with this assertion. It is not, however, dispositive. Clark argues that this type of parole proceeding does not require a hearing. We concur. We also note that, according to an administrative policy statement that the board issued, "[i]t is the policy of the Rhode Island Department of Corrections that specific steps be taken to assure that all inmates eligible for parole shall be scheduled for parole hearing when first legally eligible and to be scheduled on a regular basis thereafter." *See* Administrative Policy Statement, Procedure for Setting up Parole Process for All Eligible Inmates (effective Sept. 20, 1980) (setting forth procedures that will be initiated when inmate first becomes eligible for parole consideration).

This court has previously acknowledged a historically hands-off policy with respect to board proceedings "and the overall reluctance to interfere with what must necessarily be highly discretionary decisions." *See Ouimette,* 117 R.I. at 363, 367 A.2d at 706. We have also noted that board proceedings are nonadversarial. *See id.* at 371 n.10, 367 A.2d at 710 n. 10.

This court has, however, ruled on certain issues concerning board proceedings. For example, this court has recognized and adopted the constitutional due-process requirements for parole-revocation hearings that the United States Supreme Court delineated in *Morrissey v. Brewer,* 408 U.S. 471, 487–89, 92 S.Ct. 2593, 2603–04, 33 L.Ed.2d 484, 498–99 (1972). *See, e.g., Gaze v. State,* 521 A.2d 125, 127–29 (R.I.1987); *Ouimette,* 117 R.I. at 365–72, 367 A.2d at 706–10 (applying to parole denial).

This would be an easy case if the APA's exemption provisions excluded the board from the "judicial review of contested cases" section in addition to the other provisions relating to contested cases. As noted above,

a contested case under the APA is a proceeding "in which the legal rights, duties, or privileges of a specific party are required by law to be determined by an agency after an opportunity for hearing[.]" *See* § 42–35–1(c). Under § 42–35–15, judicial review is authorized for final orders in such cases and in certain other circumstances. We do not find that a hearing is required for the granting of parole. We conclude that this proceeding does not fall under the statute's definition of a contested case, and therefore, the judicial review section is inapplicable.

We briefly mention a Michigan case. In *Shields v. Department of Corrections*, 128 Mich.App. 380, 340 N.W.2d 95 (1983), the Michigan Court of Appeals held that the decision of the Michigan parole board at the initial stage of proceedings was not reviewable as a "contested case" under that state's administrative procedures act. *See id.* at 383–84, 340 N.W.2d at 97. That statute's definition of contested case is very similar to ours. *See id.* at 383, 340 N.W.2d at 97. The *Shields* court noted that the Michigan Court of Appeals had previously held that parole revocation and prison disciplinary proceedings constituted contested cases. *See id.* at 383–84, 340 N.W.2d at 97. One difference, however, is that the Michigan statute governing the initial granting of parole is clearer than ours: it explicitly states that such board decisions are not reviewable if in compliance with the law. *See id.* at 384, 340 N.W.2d at 97.

With respect to the Attorney General's argument that the General Assembly would have specifically exempted the board from the section concerning judicial review of contested cases as it did from certain other provisions of the statute, we do not address this issue except to state that we do not hold that a board decision can never fit the APA's definition of a contested case. We simply hold that the board decision involved in the instant case is not a contested case.

Consequently, we conclude that the Superior Court lacked subject-matter jurisdiction in this case. Because of this determination, we do not reach the remaining issues.

For the reasons stated, the petition for certiorari is granted. The order of the Superior Court is quashed. The record certified to this court is remanded to the Superior Court with our decision endorsed thereon.