DECISION
Before the court is an appeal from the January 23, 1995 decision of the Liquor Control Administrator approving a liquor license transfer. Jurisdiction in this Superior Court is pursuant to G.L. 1956 (1993 Reenactment) § 42-35-15.
Facts/Travel
The instant matter involves the transfer of a Class B liquor license from Rodella Sweeney to Sharon Isom. Ms. Isom is one of three entrepreneurs planning to operate an establishment to be known as "Jazzmasters" at 146 Clifford Street in Providence. Appellants are residents of 116 Chestnut Street, a structure located within two hundred feet of the proposed use. They objected to the license transfer, arguing that it would aggravate an already unruly situation in the area.
The Providence Board of Licenses held a hearing on the matter on August 24, 1994. After a full hearing the Board granted the transfer, finding that Ms. Isom was a "suitable" transferee. The appellants then filed an appeal and request for a de novo hearing with the Rhode Island Liquor Control Administrator (Administrator) pursuant to G.L. § 3-7-21. The Administrator held a hearing on October 13, 1994, accepting into evidence the transcript of the proceedings at the Board of Licenses as well as hearing testimony from new witnesses. The evidence introduced at both hearings is reviewed herein.
A number of residents of 116 Chestnut Street testified in opposition to the proposed transfer. Despite the number of witnesses, the testimony was essentially uniform: the area in question (known as the Jewelry District) has seen a dramatic increase in the number of establishments serving liquor and with that increase have come parking problems, numerous incident of public lewdness, disturbances, and littering. The residents also voiced concerns for public safety and suggested that the transfer was not in the best interest of the area.
Speidel/Textron, a company located in the area, also voiced opposition to the transfer. Barbara Rossi testified for the company, stating that several traffic mishaps had occurred in the area, in addition to a significant amount of vandalism. Ms. Rossi suggested that allowance of the transfer would worsen these existing problems.
Finally, Robert Johnson, Chief of Security at Johnson and Wales University, testified that the university had previously operated a dormitory on property it owned in the area. Mr. Johnson spoke of the problems that the university had experienced in the past, including thirteen alcohol-related assaults and numerous incidents of littering and public lewdness. Mr. Johnson also suggested that allowance of the transfer would aggravate these conditions.
Testimony in favor of the transfer focused on the distinct nature of the new establishment. Specifically, the entrepreneurs and their landlord testified that the Jazzmaster planned to cater to an upscale clientele. Consequently, they argued, the club would not add to existing problems, nor would it cause a recurrence of past problems.
The Board of Licenses granted the transfer, a decision subsequently upheld by the Administrator. In his written decision issued January 23, 1995, the Administrator focused on the nature of the new establishment, concluding that it was to be an "upscale" club catering to a mature clientele. Reasoning that most, if not all, of the area's past problems stemmed from "poorly planned and operated licensed liquor establishments," the Administrator proceeded to consider the manner in which Jazzmasters was conceived. Decision at 6. The decision noted that the applicants had invested over $500,000, and concluded that the club was the product of a "well-financed, thoughtful plan." Id.
The license transfer was therefore granted.
The appellants filed the instant appeal on February 21, 1995
Standard of Review
The review of a decision of the Commission by this Court controlled by G.L. 1956 (1993 Reenactment) § 42-35-15(g), which provides that when reviewing a contested agency decision:
 (g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions; (2) In excess of the statutory authority of the agency; (3) Made upon unlawful procedure; (4) Affected by other error or law; (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
This section precludes a reviewing court from substituting its judgment for that of the agency with regard to the credibility of witnesses or the weight of evidence concerning questions of fact. Costa v. Registry of Motor Vehicles,543 A.2d 1307, 1309 (R.I. 1988); Carmody v. R.I. Conflict of InterestCommission, 509 A.2d 453, 458 (R.I. 1986). Therefore, this Court's review is limited to determining whether substantial evidence exists to support the Commission's decision. NewportShipyard v. Rhode Island Commission for Human Rights,484 A.2d 893 (R.I. 1984). "Substantial evidence" is that which a reasonable mind might accept to support a conclusion. Id. at 897. (quoting Caswell v. George Sherman Sand Gravel Co.,120 R.I. 1981, 424 A.2d 646, 647 (1981)). This is true even in cases where the court, after reviewing the certified record and evidence, might be inclined to view the evidence differently than the agency. Berberian v. Dept, of Employment Security, 414 A.2d 480, 482 (R.I. 1980). This Court will "reverse factual conclusions of administrative agencies only when they are totally devoid of competent evidentiary support in the record." Milardo v. CoastalResources Management Council, 434 A.2d 266, 272 (R.I. 1981). Questions of law, however, are not binding upon a reviewing court and may be freely reviewed to determine what the law is and its applicability to the facts. Carmody, 509 A.2d at 458.
Review of Liquor Control Administrator's Decision
Under G.L. 1956 (1987 Reenactment) § 3-5-15, local licensing authorities such as the Providence Board of Licenses enjoy the right, power, and jurisdiction to issue liquor licenses. All decisions of the issuing authority are reviewable de novo by the Administrator. See G.L. 1956 (1987 Reenactment) § 3-7-21 (1994 Cum. Supp.); see also Hallene v. Smith, 98 R.I. 360, 365,201 A.2d 921, 924 (1964) (licensees entitled to de novo, rather than appellate, review of local board's decision). A hearing is required by law when the applicant appeals to the Liquor Control Administrator.[1] G.L. § 3-7-21. The superior court may subsequently review decisions of the Administrator under the Administrative Procedure Act, G.L. § 42-35-15. See Sunny DayRestaurant, Inc, v. Beacon Restaurant, Inc., 103 R.I. 707, 708,241 A.2d 295, 296 (1968) (tracing avenue of appeals for liquor license applications). This review, however, is limited in scope, allowing for reversal or modification of agency action only in specifically enumerated circumstances. See G.L. § 42-35-15 (g) (setting forth grounds for reversal of agency decisions).
A distinction exists between the guidelines governing the issuance of liquor licenses, as opposed to their suspension, revocation or renewal. See Casala v. Dio, 65 R.I. 96, 99,13 A.2d 693, 695 (1940) (denial of application should not be confused with revocation). In order to suspend or revoke a liquor license, there must be a showing that the holder has breached some applicable rule or regulation. G.L. 1956 (1987 Reenactment) §3-5-21 (1994 Cum. Supp.). Similarly, under G.L. § 3-7-6, a license holder applying for renewal may be rejected only "for cause." See Chernov Enterprises, Inc. v. Sarkas, 109 R.I. 283, 287, 284 A.2d 61, 63 (1971).
In contrast, the issuing authority (and thus the Administrator[2]) enjoys broad discretion when making an initial determination to grant a liquor license application.[3]
G.L. § 3-5-19; see also Board of Police Commissioners v.Reynolds, 86 R.I. 172, 176, 133 A.2d 737, 741 (1957); Casala, 65 R.I. at 100, 13 A.2d at 695. Review of decisions made under this broad grant focus on whether the Administrator has abused that discretion. Cf. Littell v. Morton, 445 F.2d 1207, 1210 (4th Cir. 1971) (action committed to agency discretion under federal APA is nonetheless reviewable under abuse of discretion standard); seealso Caswell v. Licensing Comm'n for Brockton, 444 N.E.2d 922, 928 (Mass. 1983) (local licensing authority's broad grant of discretion in issuing licenses may be properly limited by judicial review for abuse of discretion); Beach Lake UnitedMethodist Church v. Liquor Control Board, 558 A.2d 611, 614 (Pa. Comm. 1989) (court may review, for abuse of discretion, liquor control board's decision to grant liquor license application). When reviewing a ruling of the issuing authority granting or refusing a liquor license application, the court should investigate the evidence, not to weigh it or pass upon its credibility, but only to ascertain whether there is any legal evidence to support its ruling. The Castle. 19 Greenough Place v.City of Newport, 63 R.I. 493, 495, 9 A.2d 710, 711 (1939).[4]
As neither the relevant sections of Chapter 3 nor the regulations promulgated under it specifically provide parameters for review of this exercise of discretion, the court looks to other sources for the relevant or applicable criteria.
Under the Providence Home Rule Charter, the Board of Licenses is empowered to require inspection, investigation, and report by the police department concerning any license applicant and to receive notification from the police department concerning the fitness of the person licensed. See Home Rule Charter for the City of Providence, § 1102 (a) (b). Implicit in this grant of power is a policy of granting liquor licenses only to individuals of suitable character, that is, those without a history of trouble with the law. Generally, when considering liquor license applications, the issuing authority should consider a number of factors, including "[t]he financial stability and responsibility of the applicant, the persons interested pecuniarily in the enterprise, the fitness of the applicant, his moral character, and previous violations of law on his part." 48 C.J.S.Intoxicating Liquors, § 118 at 493 (1981 Supp. 1995). Furthermore, the issuing authority should examine "the location of the premises to be licensed, the conditions and character of the particular area, and the effect that a new permit may have on the locality." Id. at 494-95.
In reviewing the decision of the Administrator with respect to the above factors, the court notes the following evidence of record. Initially, the court notes that the Administrator had before him the original license application of Sharon Isom, on which she stated that she had no criminal record. The subsequent hearings produced evidence concerning both the nature of the planned establishment and the current situation in the surrounding area. The decision provides a thorough review of this evidence and focuses on the preparations made by the investors of the planned enterprise, as well as the enterprise's likely effect on the community. The court cannot conclude that any of Administrator's determinations on these issues constitute an abuse of discretion.
Appellants raise an additional issue with respect to Ms. Isom's application. They argue that by failing to name her partners and detail her relationship with them, Ms. Isom violated G.L. § 3-5-10. That section provides, in relevant part:
 Applicants for beverage licenses shall make full disclosure in their applications for a license of any interest, whether direct or indirect, by any other person, firm or corporation in the license applied for and failure to do so or any misrepresentation by the applicant may be cause for denial of the application.
Appellants contend that the Administrator's failure to deny the application on these grounds constitutes an error of law requiring reversal of the decision. As the appellees point out, however, the language of the statute is permissive in nature. This language suggests a legislative intent to grant the agency discretion in utilizing this statute. See State v. Taylor,108 R.I. 114, 117, 272 A.2d 680, 684 (1971) (use of word "may" in statute connotes discretionary, rather than mandatory, action);State v. Kilday, 90 R.I. 91, 94, 155 A.2d 336, 338 (1959) (statute providing that officer "may" issue summons rather than make arrest vested officer with discretionary power). Whatever the reason for the omission, the Administrator apparently did not feel that Ms. Isom's failure to name her partners necessitated denial of the license.[5] The court does not find that decision to be an abuse of discretion.
After review of the entire record, the court finds that the decision of the Liquor Control Administrator does not constitute an abuse of discretion and appellants' rights have not been prejudiced. Accordingly, the January 23, 1995, decision of the Liquor Control Administrator is affirmed. Counsel shall submit the appropriate judgment for entry.
[1] It is this hearing that brings that matter within the definition of a "contested case," as required by G.L. 42-35-15.See Pine v. Clark, 636 A.2d 1319, 1325 (R.I. 1994) (where statute did not require hearing, matter was not a contested case suitable for judicial review); accord Property Advisory Group, Inc v.Rylant, 636 A.2d 317, 318 (R.I. 1994); Barrington School Comm. v.Rhode Island State Labor Relations Bd., 608 A.2d 1126, 1131 (R.I. 1992).
[2] Because decisions of the local licensing authority are reviewable de novo, see G.L. § 3-7-21, any discretion resting in the former necessarily exists in the latter as well. See Baginskiv. Alcoholic Beverage Comm'n, 62 R.I. 176, 182-83, 4 A.2d 265, 268 (1939) (interpreting statutory language allowing Administrator to review issuing authority decision and affirm, reverse or modify "as to it shall seem proper" as granting Administrator same discretion as issuing authority).
[3] While the instant appeal concerns a license transfer, rather than an original application, the issuing authority is guided by the same principles. See Manoogian v. Williamson,89 R.I. 426, 430, 153 A.2d 165, 168 (1959); see also 48 C.J.S.Intoxicating Liquors, § 151 at 560 (1981 Supp. 1995) (transfer and issuance of liquor licenses involve similar concerns).
[4] The fact that The Castle involved a certiorari proceeding does not deprive if of precedential value. Prior to passage of the Administrative Procedures Act in 1962, certiorari petitions were the only route available for judicial review of agency decisions. As the standard of review utilized in certiorari petitions essentially mirrors the language of G.L. § 42-35-15
(g), cases reviewing liquor licensing decisions on certiorari are of precedential value here.
[5] In her brief, Ms. Isom states that her partners were not named because the partnership had not yet been formed at the time of the application's filing.