Paul D. JEWELL

v.

Margaret W. JEWELL.

No. 98–10–Appeal.

Supreme Court of Rhode Island.

May 12, 2000.

Terrance J. Higgins, David Cass, North Kingstown, for plaintiff.

Joseph T. Houlihan, Kathleen Managhan, Newport, for defendant.

Present WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS and GOLDBERG, JJ.

## OPINION

GOLDBERG, Justice.

This case came before the Court on the appeal of the plaintiff, Paul D. Jewell (Paul), from an order of the Newport County Family Court entered on October 2, 1997, and a final judgment entered on December 9, 1997. The order was in the nature of a contempt order. The judgment called for the issuance of a body attachment against Paul pursuant to the contempt order, and declared void a divorce obtained by Paul in the Dominican Republic, holding that the divorce was not entitled to comity, and therefore a nullity under the law of the State of Rhode Island.

### Facts and Travel

This is a tale of two wives and a long and tortuous voyage through two divorce forums. On December 8, 1995, Paul, an active-duty member of the United States Coast Guard, filed a complaint for divorce in Newport County Family Court from his wife of sixteen years, Margaret W. Jewell (Margaret), on the ground that irreconcilable differences had led to the irremediable breakdown of the marriage. In so doing, he swore that he and Margaret were domiciled inhabitants of the State of Rhode Island, that they had resided in Rhode Island for more than one year, and that he was, at the time, a domiciled inhabitant of the state. However, in May 1997, Paul filed another petition for divorce in the Dominican Republic. A hearing was thereafter held in the Dominican Republic pursuant to Paul's petition, at which Paul appeared alone. As a result of that hearing, a divorce decree was entered on June 2, 1997, pronouncing a divorce between Paul and Margaret on the grounds of "incompatibility of characters." The decree certified, however, that the divorce would not become final until August 7, 1997.

In the meantime, Paul unsuccessfully attempted to withdraw his complaint for divorce in the Newport County Family Court, asserting that he was not a domiciled inhabitant of Rhode Island, and therefore his complaint for divorce should be dismissed for lack of jurisdiction. Paul alleged that although he and his wife were residents of Rhode Island for a number of years, Illinois was his state of domicile, Paul having elected to retain Illinois as his state of domicile as an active-duty member of the armed services. In turn, Margaret motioned to file out of time a counterclaim for divorce that was subsequently granted on July 7, 1997. The counterclaim requested, among other things, that the Family Court enter a judgment divorcing Margaret from the bond of marriage.

Upon learning of Paul's maneuvers in the Dominican Republic, Margaret sought a restraining order against Paul, on the ground that the marital domicile was Rhode Island and that a complaint for divorce was pending in Family Court at the time Paul went to the Dominican Republic. Margaret requested that Paul be restrained and enjoined from proceeding with a divorce petition in any state other than Rhode Island. Following a hearing, a justice of the Family Court ordered that a restraining order be issued against Paul. However, Paul objected to the entry of the order. A subsequent hearing was held on July 24, 1997, at which a master of the Family Court entered the order that restrained Paul from proceeding with the divorce in the Dominican Republic. However, on August 7, 1997, the final decree of divorce entered in the Dominican Republic, and Paul remarried in Puerto Rico on August 22, 1997. Six days later, a child was born to Paul and his reputed new wife.

Before Paul entered into the second marital union, an additional hearing was held on August 12, 1997, before another justice of the Family Court, to determine whether Paul could withdraw his complaint for divorce in Rhode Island for lack of jurisdiction. That request was denied on August 21, 1997. However, Paul remarried the next day. On September 4, 1997, Margaret filed a motion to adjudge Paul in contempt for violating the restraining order by proceeding with the entry of the final decree in the Dominican Republic. In turn, Paul sought to vacate the restraining order on the ground that it barred him from proceeding in any other state, and that because the Dominican Republic is not a state, he was not in contempt. Both motions were heard on September 22, 1997, at which time the Family Court justice was informed that Paul had not only obtained a final decree of divorce issued in the Dominican Republic after the restraining order had been entered and his motion to withdraw his complaint had been denied, but that he had also remarried. The trial justice thereafter denied Paul's motion to vacate the restraining order and found Paul to be in willful contempt. As a result, Paul was sentenced to the Adult Correctional Institutions with a directive that he could purge himself of contempt by correcting the Dominican Republic judgment within thirty days. Further, the court declared that the Dominican Republic divorce was void and that, as a result, Paul had entered into a bigamous relationship. Paul filed a timely appeal of the order.

Thereafter, in October of 1997, Margaret filed two motions. The first requested that the Family Court declare that the Dominican Republic divorce was not entitled to comity, and the second motion requested that Paul be found in contempt for his failure to correct the Dominican Republic divorce decree. Both motions were heard on November 20, 1997, and a judgment was entered on December 9, 1997, finding that: (1) Paul had not purged himself with respect to the September contempt order, and (2) the Dominican Republic divorce was void because of the lack of notice to Margaret and because that country lacked jurisdiction. A second body attachment was issued, and remains

outstanding. Paul filed a timely appeal of this judgment.

### Discussion

The first issue for our determination is whether the Family Court was vested with jurisdiction over this divorce. We hold that having filed a complaint for divorce in this state and availing himself of this state's judicial resources, and by swearing that he was a domiciled resident of this state, Paul is estopped from now claiming that his true state of residency is Illinois, his state of domicile at the time he entered the Coast Guard. Paul may not now assert that the Family Court is deprived of jurisdiction over this divorce simply because it may be easier and more expeditious to seek a divorce in another jurisdiction. Further, we are satisfied that at all times relevant to his case, the Family Court retained *in personam* jurisdiction over Paul, as well as subject-matter jurisdiction over this pending case. We also note that throughout this proceeding, until he attempted to procure a quickie divorce in the Dominican Republic, Paul was vigorously pursuing the dissolution of his marriage in the Family Court, and had filed numerous motions and memoranda to support his claim. Accordingly, as a matter of public policy, this Court will not permit a complainant who, after having availed himself of the jurisdiction of the courts of this state and our judicial resources, seeks to evade the court's jurisdiction by filing an identical claim in another jurisdiction and attempting to retract his sworn statement that his place of residence was Rhode Island.

Notwithstanding these various maneuvers, made while the petition was pending in the Family Court and intended to avoid his responsibilities to his wife and family in this state, which can be described only as conduct unbecoming a husband and father, the policy interests of the judiciary of this state defeat any interest the appellant may have in the convenience of a particular jurisdiction, particularly one that permits the entry of an *ex parte* decree of divorce. Because we are satisfied that the Family Court additionally maintained, at all relevant times, *in personam* jurisdiction over Paul, the Family Court justice acted well within her authority in issuing a restraining order when it came to her attention that Paul was pursuing the same relief in a foreign tribunal. Accordingly, we hold that Paul is estopped from now challenging the jurisdiction of the Family Court of Rhode Island over his person and over the subject matter of this controversy.

Next, Paul argued that it was error for the hearing justice to find him in contempt because, according to Paul, the divorce already had been granted and, as he argued before us, that after the issuance of the restraining order, he took no affirmative steps to procure the divorce in the Dominican Republic. However, the record is silent and his appellate counsel was unable to assure us that no one acting on Paul's behalf took any steps to secure the entry of the final decree. Further, the fact that Paul purported to marry an obviously pregnant woman so soon after the entry of the Dominican Republic decree and days before the birth of their child, while the Family Court continued to retain *in personam* jurisdiction over him, is indicative of contumacious conduct and raises questions about the ethical behavior of any member of the bar of this state who may have so advised him. Moreover, Paul's motion to dismiss the divorce on the ground that he was not a resident of Rhode Island had been denied before he entered into this second union. Inasmuch as no appeal was taken from that order, it remains the law of this case and is not the subject of this appeal. Further, Margaret's counterclaim for divorce was viable beginning on July 7, 1997, the date the counterclaim was allowed. Therefore, having retained both *in personam* jurisdiction over Paul and subject-matter jurisdiction over the pending divorce action, it was appropriate for the hearing justice to issue

a body attachment upon Paul, determining that he not only had violated the restraining order, but also had purported to remarry on the heels of the entry of a final decree in the Dominican Republic. Further, we note that the body attachment remains outstanding and that Paul is now a fugitive from the Family Court. We therefore hold, that Paul is precluded from challenging in this Court the order of contempt lawfully issued by the hearing justice.

■ However, Paul is not without recourse. Should he wish to purge himself of contempt, he may return to Rhode Island, surrender to the Family Court, and demonstrate to the Family Court justice that neither he nor anyone acting on his behalf affirmatively pursued, in violation of the restraining order, the entry of a final decree in the Dominican Republic. We are not satisfied that nothing was done affirmatively to procure the Dominican Republic decree in violation of the restraining order, counsel having been unable to assure us otherwise.[1] Nevertheless, this is an issue for the Family Court to determine should Paul choose to appear in order to purge himself of contempt.

■ Further, we unequivocally refuse to recognize the Dominican Republic divorce, or to accord it any comity whatsoever. The *ex parte* divorce issued by the Dominican Republic, purportedly dissolving the marriage of two people, neither of whom had any connection to that forum, is void as a matter of law as repugnant to the public policy of this state, and we decline to accord it comity. This fly-by-day divorce that was pronounced on May 26, 1997, after Paul flew into the country in the morning, made a brief appearance with counsel, and departed the same day, is a sham, particularly where neither party was a resident of the Dominican Republic nor maintained any other legitimate connection to that forum. We are satisfied that the Dominican Republic divorce and Paul's subsequent remarriage are void as repugnant to the law and policy of this state, and we decline to accord any comity to those proceedings. We hold that, inasmuch as it is completely lacking any indicia of reliability, including notice and no adequate opportunity for Margaret to appear, and was obtained solely to avoid and frustrate the lawful jurisdiction of the courts of this state, the trial justice was correct in finding that Paul was engaged in a bigamous relationship.

■ We affirm the decision of the hearing justice refusing to give full faith and credit to the Dominican Republic divorce decree. Although Article 4, section 1, of the United States Constitution mandates that full faith and credit be "given in each state to the public acts, records, and judicial proceedings of every other state," a decision to recognize a foreign decree rests solely with the courts of this state, and we decline to confer that privilege to the plaintiff in this case. Accordingly, we are satisfied that because she was not required to give full faith and credit to the Dominican Republic divorce decree, the hearing justice did not err in refusing to recognize a decree that was repugnant to this state's public policy. Therefore, Paul remains both a fugitive from the lawful jurisdiction of the Family Court and a bigamist whose child, born on August 28, 1997, is illegitimate.

Finally, Paul notified the Coast Guard of his divorce and subsequent remarriage almost immediately. This notification had

---

1. We note that John Ruginski, Paul's attorney in the Dominican Republic proceeding, testified at the September 22, 1997 hearing about a two-step process to secure a divorce in that country. When asked whether he or any one of his associates may have taken any affirmative steps after the June 2, 1997, pronouncement of divorce in order for Paul to secure a final decree on August 7, 1997, Ruginski stated that, "[t]he only thing [my associate] did, and I'm not sure, is either going to the Court and pick this paper up after it was already signed which is the divorce decree and sentence together. * * * You get the final decree and you get the divorce sentence with that."

the intended effect of depriving Margaret of health insurance and commissary privileges to which she is entitled by virtue of her status as a military wife. This amendment to his military dependents list, accomplished by Paul during the pendency of this divorce, was unlawful and contemptuous. Those benefits should be reinstated forthwith.

## Conclusion

For these reasons, we deny the plaintiff's appeal and affirm the judgment of the Family Court, to which the papers of this case may be remanded.

## FLANDERS, Justice, concurring in part and dissenting in part.

Although I concur with that portion of the Court's opinion that refuses to recognize or enforce the Dominican Republic divorce decree, for the reasons explained below I respectfully dissent from those portions of the Court's opinion that address whether the plaintiff-husband was estopped to challenge the Family Court's jurisdiction to hear and grant the defendant-wife's application for a temporary restraining order and whether the Family Court properly found him in contempt of that restraining order.

## I

### Lack of Subject–Matter Jurisdiction

The Court holds that by filing for divorce here and swearing that he was a domiciled resident of Rhode Island for more than a year before initiating his divorce complaint, the plaintiff-husband was thereby "estopped from now challenging the jurisdiction of the Family Court of Rhode Island over * * * the subject matter of this controversy." But because the husband's actual domicile and residence immediately prior to his military posting to Rhode Island were in Illinois, the Family Court could not acquire subject-matter jurisdiction to hear his divorce complaint based upon either his false allegations of having been a domiciled inhabitant of Rhode Island or upon his wife's domicile and residence here. See G.L.1956 § 15–5–12(a) (providing that the pre-service residence and domicile of any persons serving in the armed forces or merchant marine shall continue as their domicile and residence during their time of service). Moreover, the Family Court's lack of subject-matter jurisdiction to hear the husband's divorce complaint cannot be waived. Thus, I respectfully disagree with the majority's conclusion that the plaintiff-husband waived his right to challenge the Family Court's subject-matter jurisdiction over his divorce complaint, a determination that runs afoul of our own settled jurisprudence on this issue.

As I read § 15–5–12,[2] satisfaction of the domicile and residence requirements of that statute are essential prerequisites to the Family Court's ability to exercise its

2. General Laws 1956 § 15–5–12(a) provides as follows:

"**Domicile and residence requirements.**— (a) No complaint for divorce from the bond of marriage shall be granted unless the plaintiff shall have been a domiciled inhabitant of this state and have resided in this state for a period of one year next before the filing of the complaint; provided, that if the defendant shall have been a domiciled inhabitant of this state and shall have resided in this state for the period of one year next before the filing of the complaint, and shall actually be served with process, the above requirement as to domicile and residence on the part of the plaintiff shall be deemed to have been satisfied and fulfilled; provided, however, the residence and domicile of any person immediately prior to the commencement of his or her active service as a member of the armed forces or of the merchant marine of the United States, or immediately prior to his or her absence from the state in the performance of services in connection with military operations as defined in subsection (c), shall, for the purposes of this section, continue to be his or her residence and domicile during the time of his or her service and for a period of thirty (30) days thereafter. Testimony to prove domicile and residence may be received through the ex parte affidavit of one (1) witness."

subject-matter jurisdiction over divorce complaints. Thus, a divorce plaintiff's satisfaction of these basic prerequisites for entertaining a divorce complaint cannot be waived. *Cf. Coone v. Coone,* 74 R.I. 232, 59 A.2d 850 (1948) (holding that husband whose only residence in Rhode Island was prompted by military posting could not avail himself of the statute's jurisdictional grant, which was meant to apply only to those whose actual residence was in the state before their military service).

Section 15–5–12(a) confers subject-matter jurisdiction upon the Family Court over divorce complaints only when certain residence requirements are satisfied. As this Court has repeatedly held, "[a] challenge to subject-matter jurisdiction questions the very power of the court to hear the case. * * * [Such] a claim may not be waived by any party and may be raised at any time in the proceedings." *Pine v. Clark,* 636 A.2d 1319, 1321 (R.I.1994). *See also Kretzer v. Kretzer,* 506 A.2d 81, 82 (R.I.1986) (holding that because "subject-matter jurisdiction is an indispensable ingredient of any judicial proceeding, it can be raised by the court sua sponte at any time, and it can be neither waived nor conferred by consent of the parties"). Thus, because the plaintiff-husband was not, in fact, a domiciled resident of Rhode Island, but of Illinois (where he resided immediately prior to his military posting to Rhode Island),[3] the Family Court lacked jurisdiction over the wife's request for a restraining order *before* she had filed and served her own counterclaim for divorce. And because the Family Court conducted no separate hearing before entering the restraining order in July 1997, the only basis for its entry of that order was a restraining-order application and hearing that occurred in June, *before* the court properly acquired subject-matter jurisdic-

tion over this dispute via the wife's counterclaim. As a result, the court improperly entered the restraining order, and thus, it could not have found the husband in contempt of that invalid order. Moreover, the husband retained the right at any time to challenge the Family Court's subject-matter jurisdiction in this case because the subject-matter jurisdiction of a court cannot be waived by the parties.

## II

### The Contempt Judgment

I also disagree with the majority's determination that the Family Court did not err when it found the husband in contempt of the court's restraining order barring him from proceeding with the Dominican Republic divorce petition. First, as previously discussed, the restraining order itself was invalid because it should not have entered at all based upon a hearing that occurred .before the court properly acquired jurisdiction over this dispute. Thus, the husband never should have been adjudged in contempt of an unlawful decree. See *Durfee v. Ocean State Steel, Inc.,* 636 A.2d 698, 704 (R.I.1994) (stating that " '[c]ivil contempt * * * is established when it is proved by clear and convincing evidence that a lawful decree was violated' ") (emphasis added). Second, in a contempt proceeding, the burden of proof is on the complainant to prove contempt, not on the alleged contemnor to prove he or she has not violated a court order. *See Williams v. Williams,* 429 A.2d 450, 454 (R.I.1981) (holding that "a complainant who seeks to invoke the court's contempt power must make a prima facie showing of contempt by introducing proof * * * '"). And the burden of proof is a heavy one: that is, " 'clear and convincing evidence

---

**3.** The mere fact that the husband swore to his residency in Rhode Island in his divorce complaint should not prevent him from showing that his assertion of a Rhode Island domicile was mistaken, and/or contrary to supervening federal law. Indeed, the military-service pro-

visions of § 15–5–12(a) precluded the husband from filing for a divorce in this state because at all times material to this case he was still a domiciled resident of Illinois notwithstanding his military posting to Rhode Island.

that a lawful decree was violated.'" *Durfee*, 636 A.2d at 704.

In this case, the Family Court found that the husband was in contempt of its restraining order barring him from pursuing the Dominican Republic divorce because, even though he obtained that divorce decree *before* it entered the restraining order, the husband let the Dominican Republic decree become final without taking any affirmative steps to prevent this event from occurring. According to the majority, "the record is silent and his appellate counsel was unable to assure us that no one acting on Paul's behalf took any steps to secure the entry of the final decree." The law of contempt is clear, however, that the burden was not on the husband but on the moving party (the wife) to show by clear and convincing evidence that the husband had acted to obtain the Dominican Republic divorce *after* the issuance of the restraining order. *Id.* A mere absence of proof on the husband's part that no one acting on his behalf took any affirmative steps to enter the final decree was insufficient to find him in contempt, nor should he have been held in contempt merely by doing nothing and allowing the decree to become final. His conduct may well have been contemptible, but it was not contemptuous of the Family Court's specific restraining order.

### Conclusion

For these reasons, I would vacate the Family Court's contempt judgment because it not only lacked the requisite evidence to find the husband in contempt, but it also lacked subject-matter jurisdiction to hear and decide the restraining-order application that formed the basis for the contempt finding. I would then remand this case for further proceedings on the wife's divorce petition.