**BRADFORD ASSOCIATES et al.**

v.

**RHODE ISLAND DIVISION
OF PURCHASES et al.**

Shaw Construction Corporation

v.

**Rhode Island Division of
Purchases et al.**

Nos. 2000–160–APPEAL,
2000–188–APPEAL.

Supreme Court of Rhode Island.

May 23, 2001.

Warren D. Hutchinson, Thomas W. Heald, Lauren E. Jones, Roger N. LeBoeuf, Providence, for Plaintiff.

Harris Weiner, Richard B. Wooley, for Defendant.

Present WILLIAMS, C.J., LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

WILLIAMS, Chief Justice.

This consolidated appeal comes before us on the appeal of the State of Rhode Island Division of Purchases (State), contesting an order of the Superior Court declaring that the State is constitutionally required to conduct an adjudicatory hearing before finalizing the suspension of a government contractor. Because the Superior Court lacked jurisdiction to make that determination, we vacate the decision of the motion justice. In doing so, we reject the plaintiffs' argument that there is a protected liberty interest in avoiding reputational damage that potentially may result from suspension. The facts insofar as pertinent to this appeal are as follows.

## I

### Facts and Travel

In April 1996, the State sought architectural, engineering, and contracting services for a veterans memorial planned for the Rhode Island Veterans Cemetery in Exeter, Rhode Island. The memorial, the central monument in the cemetery, was scheduled to be dedicated on Memorial Day, 1999. After the bidding period, the State awarded the engineering contract to Waterman Engineering, Inc. (Waterman or plaintiffs). Waterman was responsible for preparing the monument site, foundation design plans, and roadway design plans. Waterman hired a subcontractor, Bradford Associates (Bradford or plaintiffs), to design the monument and site. The State hired a general contractor, Shaw Construction Corporation (Shaw or plaintiffs), to build and manage the entire project.

The agreement between plaintiffs and the state was comprised of the state Procurement Regulations (Regulations), state General Conditions of Purchase (State Conditions), and General Conditions of the Contract for Construction (General Conditions). Section 044 200 of the General Conditions described the masonry specifications, the source of the dispute leading to the current litigation. The granite was to be:

"Impala Grey or equal and approved. It shall be sound, durable and free from seams, lines, and free from bunches or depressions. The ends of all stone shall be jointed square with the planes of the top and face." Section 044 200(2.01(B)).

In May 1998, Shaw issued its construction schedule with a planned completion date of November 1998. In July 1998, Shaw became unhappy with its planned granite supplier. Because Shaw doubted the timely delivery of the granite, and in an attempt to maintain the November completion date, Shaw discussed its concerns with the State. Shaw suggested retaining an alternate granite supplier, and Bradford inquired whether another type of granite could be substituted. Shaw then contacted another granite supplier, who subsequently provided samples to Bradford. Bradford approved a sample of peribonka-type granite. Unfortunately for our veterans, the granite chosen was not delivered until December 1998, not installed until sometime thereafter, and the memorial could not be dedicated on time.

In August 1999, the State notified Shaw that the peribonka that had been installed had major problems. The peribonka allegedly was of such a poor quality that it could not be engraved. In fact, the engraver hired by the State refused to work with the peribonka. An expert later retained by the State corroborated the engraver's opinion and found that the peribonka had "large open seams [and] cracks" and was wholly inappropriate for a memorial of this type. In September 1999, the State formally rejected the peribonka and ordered Waterman to replace it with black impala granite by October 15, 1999. Waterman refused. Waterman asserted that it was not involved in the process of selecting the granite, and alleged that Shaw, as general contractor, was responsible for any cure. In turn, Shaw blamed Bradford because it had approved the peri-

bonka. Furthermore, Shaw alleged that Waterman was responsible for cure, since Bradford was Waterman's subcontractor.

In October 1999, the state purchasing agent notified Waterman that:

"[i]t is the State's position that a serious construction defect central to the project, now evident and related to the quality of substitute granite panels installed by the contractor, was caused in significant part by [Waterman's] substantial non-performance. * * * As a result of [Waterman's] substantial non-performance * * * the Division of Purchases shall suspend [Waterman] from engagement on State projects as either Principal or Sub–Consultant for two (2) years."

Similar notices were sent to Shaw and Bradford. Additional complaints were lodged against Shaw for alleged water retention on pavement, quality of pavement, and the leaching of a substance from precast capstone. Pursuant to § 4.9 of the Regulations governing suspension, the State gave plaintiffs an opportunity to contest the suspension in writing.

The plaintiffs submitted written objections in which they requested a hearing and protested the reasons for the suspension. In December 1999, plaintiffs received the State's response. The State advised plaintiffs that it found "no argument or information sufficient to rescind or revise its tentative notice" of suspension. The request for a hearing was denied, as none was required by either statute or regulation. Waterman and Bradford submitted written appeals to the director of the State Department of Administration (DOA) (director). The director affirmed the decision to suspend the plaintiffs. Meanwhile, Shaw filed a demand for arbitration pursuant to its contract with the

State.[1]  While the arbitration was pending, Shaw also submitted an appeal, with a request for a hearing, to the director.  The director rejected both the appeal and the hearing request.

The plaintiffs filed complaints in the Superior Court, alleging that the written procedures available to contest and appeal the suspension violated the due process clause and that, had the State afforded them a hearing, plaintiffs would have been vindicated.  Shaw requested a declaratory judgment.  The motion justice consolidated the claims.  On March 29, 2000, after hearings and upon consideration of the memoranda of the parties, the motion justice entered an order instructing the State to give the plaintiffs a hearing.  The motion justice suggested that the State follow the format in G.L.1956 § 42–35–9, the contested case provision of the Rhode Island Administrative Procedures Act (APA).  In addition, the court granted a preliminary injunction enjoining the state from continuing the existing suspensions.  However, he stayed that portion of the order for thirty days.  The State then filed the instant appeal and, at the same time, requested a stay in the Superior Court with respect to the order to conduct a hearing, pending the outcome of the appeal.  The motion justice granted that request, but denied the state's request to continue the stay of the preliminary injunction.  The State contested the motion justice's decision with respect to the suspension, which we vacated by order of this Court on May 18, 2000.

## II

### Subject–Matter Jurisdiction

The State's first argument is that the Superior Court lacked subject-matter jurisdiction.  "A challenge to subject-matter jurisdiction questions the very power of the court to hear the case.  It is an axiomatic rule of civil procedure that such a claim may not be waived by any party and may be raised at any time in the proceedings."  *Pine v. Clark*, 636 A.2d 1319, 1321 (R.I.1994) (citing *La Petite Auberge, Inc. v. Rhode Island Commission for Human Rights*, 419 A.2d 274, 280 (R.I. 1980); Super.R.Civ.P. 12(b) & (h)).  The jurisdiction of the Superior Court was invoked pursuant to two statutes— § 42–35–15 and G.L.1956 § 9–30–1.  We will discuss the propriety of each *seriatim.*

The plaintiffs' Superior Court complaints requested both a review of the validity of the suspension decision and a review of the constitutionality of the regulatory and statutory procedures.  Bradford and Waterman filed their Superior Court complaint pursuant to § 42–35–15, the judicial review provision of the APA.  The State argues that the motion justice did not have jurisdiction because there is no statutory authority to review suspension decisions in either the Purchases Act, G.L.1956 chapter 2 of title 37, or in the Regulations.  Therefore, the State's position is that since the Superior Court did not have jurisdiction, we must refuse to address the issues raised by plaintiffs on appeal.  *See Pine,* 636 A.2d at 1325 (declining to reach remaining issues where Superior Court lacked subject-matter jurisdiction); *see also Scolardi v. City of Providence,* 751 A.2d 754, 756 (R.I.2000) (holding that in the absence of "specific statutory delineation of a particular forum for relief, a party must resort to [the Supreme Court] by way of common law certiorari").  We agree.

---

**1.**  The arbitrator found that Shaw had substantially performed the contract and ordered the state to pay Shaw $20,465.60.  A motion to vacate the arbitration award is pending in the Superior Court.

■ Generally, all administrative agencies within the State are bound by the rulemaking provisions of the APA. *See Jefferson v. Moran*, 563 F.Supp. 227, 229 (D.R.I.1983); § 42–35–18(a). In comparison, the APA authority to review agency decisions is more narrow. There are two sections that, if applicable, prevent such review. *See* §§ 42–35–15, 42–35–18(b).

First, agency decisions are not reviewable in the Superior Court if the agency is expressly exempted by § 42–35–18(b). Decisions made pursuant to the Purchases Act do not enjoy such exemption. *See id.* Second, agency decisions are not reviewable by the Superior Court unless the suit is initiated by a person "who is aggrieved by a final order in a *contested case.*" Section 42–35–15(a). (Emphasis added.) A contested case is "a proceeding, including but not restricted to ratemaking, price fixing, and licensing, in which the legal rights, duties, or privileges of a specific party are required by law to be determined by an agency after an opportunity for hearing." Section 42–35–1(c). Therefore, we must review the statutory law applicable to suspensions for the presence of a hearing requirement. *See Property Advisory Group, Inc. v. Rylant*, 636 A.2d 317, 318 (R.I.1994) ("a hearing must be required by law in order for an administrative matter to constitute a contested case") (citing *Barrington School Committee v. Rhode Island State Labor Relations Board*, 608 A.2d 1126, 1131 (R.I.1992); *Lynch v. Gontarz*, 120 R.I. 149, 155, 386 A.2d 184, 187 (1978); *Providence Gas Co. v. Burke*, 119 R.I. 487, 502, 380 A.2d 1334, 1342 (1977); *Newport National Bank v. Providence Institution for Savings*, 101 R.I. 614, 619–20, 226 A.2d 137, 141 (1967)).

Section 4.9 of the Regulations governs suspension. In particular, § 4.9.6 provides that if a suspended contractor chooses to protest the suspension, its remedy is set forth in § 37–2–52. Neither provision makes mention of a hearing. Therefore, the State is not required by law to give a hearing to suspended contractors. Accordingly, § 42–35–15, the provision for judicial review of contested cases, does not apply to suspension decisions, and any exercise of jurisdiction predicated on this section by the Superior Court is invalid.

■ However, our inquiry cannot end before we address the jurisdictional basis asserted by Shaw. Shaw filed its Superior Court action pursuant to the Uniform Declaratory Judgments Act (act), G.L.1956 chapter 30 of title 9. The act vests in the Superior Court the "power to declare rights, status, and other legal relations." Section 9–30–1. This power is broadly construed, to allow the trial justice to "facilitate the termination of controversies." *Capital Properties, Inc. v. State*, 749 A.2d 1069, 1080 (R.I.1999) (quoting *Fireman's Fund Insurance Co. v. E.W. Burman, Inc.*, 120 R.I. 841, 845, 391 A.2d 99, 101 (1978)). An action pursuant to the act invokes the original, rather than appellate, jurisdiction of the Superior Court. *See Canario v. Culhane*, 752 A.2d 476, 479 (R.I.2000) (citing *Roch v. Garrahy*, 419 A.2d 827, 830 (R.I.1980)). To his credit, the motion justice attempted to resolve the dispute by rendering an opinion on the constitutionality of the suspension procedure afforded plaintiffs. We typically affirm a motion justice's "jurisdiction to construe the rights and responsibilities of any party arising from a statute pursuant to the powers conferred upon the Superior Court by [the act]." *Canario*, 752 A.2d at 478–79; *see also Millett v. Hoisting Engineers' Licensing Division of the Department of Labor*, 119 R.I. 285, 291–92, 377 A.2d 229, 233–34 (1977) (explaining benefit and utility of declaratory judgment jurisdiction); *see also Pine*, 636 A.2d at 1322 (dismissing case for lack of APA subject-

matter jurisdiction where party sought "to obtain judicial review of board decision[ ] in [an] individual case[ ]," but recognizing that court could have rendered a declaratory judgment "regarding the applicability or validity of any rule made by a governmental agency."). Accordingly, we find that the Superior Court had subject-matter jurisdiction under the act.

## III

### Procedural Due Process

■■■ Nevertheless, we disagree with the motion justice's resolution of the constitutional issue. The motion justice, relying on *Gonzalez v. Freeman,* 334 F.2d 570 (D.C.Cir.1964), found that the reputational and financial impact of a suspension triggered due process protection, and that the State should have provided plaintiffs a hearing. "A claimant alleging a deprivation of due process rights must demonstrate that either a property or liberty interest clearly protected by the due process clause was divested * * * without [adequate] procedural safeguards." *Salisbury v. Stone,* 518 A.2d 1355, 1360 (R.I. 1986) (citing *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548, 556 (1972)). The plaintiffs must assert a "legitimate claim of entitlement" to demonstrate a property interest in their government contract, which they failed to do in the instant case. *Id.* (quoting *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709, 33 L.Ed.2d at 561). Further, it is well settled that no person has a legal right to do business with the government. *See Perkins v. Lukens Steel Co.,* 310 U.S. 113, 125, 60 S.Ct. 869, 875, 84 L.Ed. 1108, 1113 (1940); *Smith & Wesson v. United States,* 782 F.2d 1074, 1081 (1st Cir.1986).

■■■ The plaintiffs assert that suspension implicates a liberty interest. In many federal cases, and in at least one state

decision, such a liberty interest has been found. *See Mainelli v. United States,* 611 F.Supp. 606, 613 (D.R.I.1985) (citing *A.T.L., Inc. v. United States,* 736 F.2d 677, 682–83 (Fed.Cir.1984); *Transco Sec., Inc. of Ohio v. Freeman,* 639 F.2d 318, 321 (6th Cir.1981); *Old Dominion Dairy v. Secretary of Defense,* 631 F.2d 953, 961–64 (D.C.Cir.1980); *Shermco Industries v. Secretary of the Air Force,* 584 F.Supp. 76, 87–88 & n. 7 (N.D.Tex.1984)); *see also Golden Day Schools, Inc. v. State Department of Education,* 83 Cal.App.4th 695, 99 Cal.Rptr.2d 917, 925 (2000). However, in *Mainelli,* the court aptly noted that in the federal cases, a liberty interest is "implicated where a suspension is based on charges of fraud and dishonesty." *Mainelli,* 611 F.Supp. at 613.

The instant case is easily distinguished because there is no charge of fraud or dishonesty. This is a simple case of "[s]ubstantial nonperformance on at least one contract." Regulation § 4.8.3.5. Further, the Superior Court should not have relied on *Gonzalez.* While *Gonzalez* provides a good discussion of the potential impact of federal suspension and debarment, which perhaps may have "grave economic consequences," the court did not expressly find a liberty interest. *See Gonzalez,* 334 F.2d at 574. The *Gonzalez* holding was based on the authority of the federal Administrative Procedures Act, from which the court drew a hearing requirement. *See Gonzalez,* 334 F.2d at 578. In addition, the government in that case had no formal procedures or regulations in place at all for suspended or debarred contractors. *See id.* That is certainly not the case here.

Suspension of these plaintiffs from a government contract absent a hearing is not *per se* unfair. The current procedures were attached to the contracts, and all the plaintiffs were bound by them. In this case, the plaintiffs were provided the op-

portunity to protest the state purchasing agent's decision. *See* § 37–2–52(b); Regulations § 4.9.2. The plaintiffs were given an initial decision, and an opportunity to appeal. The director of the DOA then provided a detailed explanation of the decision to affirm the purchasing agent. No hearing was required by statute. In fact, the General Assembly chose not to adopt a hearing provision when it adopted portions of the Model Procurement Code. We are satisfied that any potential harm that may have been endured by the plaintiffs did not rise to the aforementioned constitutionally protectable level.[2]

**Conclusion**

For the reasons stated, the defendant's appeal is sustained, the judgment of the Superior Court is vacated, and the case is remanded to the Superior Court for further proceedings consistent with this opinion.

---

2.  Given our conclusion in the instant case, we need not address the sovereign immunity defense raised by the State at this time.