308 A.2d 463.

STATE *vs.* LESLEY E. STORMS.

AUGUST 6, 1973.

PRESENT: Roberts, C. J., Paolino, Joslin, Kelleher and Doris, JJ.

JOSLIN, J. Lesley E. Storms was tried and convicted before a justice of the Superior Court sitting without a jury on an indictment charging him with unlawfully, and without a license, carrying a pistol on or about May 6, 1970 in violation of G. L. 1956 (1969 Reenactment) §11-

47-8. A demurrer to the indictment on constitutional grounds was overruled as was a subsequent attack based upon the same grounds and made at the close of the evidence after both sides had rested. The only exceptions the defendant now presses are to these rulings.[1]

The defendant's initial challenge is that the legislation which makes it unlawful for him to carry a pistol or revolver on his person, unless licensed. to do so, infringes upon the right of self defense guaranteed to all persons by art. I, sec. 23 of the state constitution. That challenge may be summarily rejected since the constitutional provision relied upon declares only that the enumeration of rights in the Declaration of Rights "shall not be construed to. impair or deny others retained by the people," and manifestly this guarantee in no sense assures a right of self defense.

Moreover, defendant, even had he relied upon art. I, sec. 22 of the state constitution which safeguards the right of the people to keep and bear arms, might not be on sound ground. Then he would have been burdened with persuading us of the weakness of what is apparently the prevailing view, viz., that a constitutional guarantee to keep and bear arms is not infringed upon by legislation which, in broad terms, forbids the unlicensed carrying of a pistol or revolver upon one's person excepting only in his home and place of business or upon his land. *Burton* v. *Sills,* 53 N. J. 86, 248 A.2d 521 (1968); *Matthews* v. *State,* 237 Ind. 677, 148 N.E.2d 334 (1958). *Contra, State* v. *Kerner,* 181 N. C. 574, 107 S.E. 222 (1921).

---

[1]Just prior to the commencement of the argument in this court, however, the defendant's counsel inquired if his motion requesting Justice Doris to abstain from participation in the case had been or would be considered. Thereupon, Justice Doris denied the motion and refused to withdraw. An appeal to the full bench followed, and that appeal has been assigned for hearing to the current argument list.

Alternatively, defendant argues that the delegation by our Legislature of the authority to license the carrying of handguns, even if within the legislative prerogative and not violative of his constitutional right to keep and bear arms, is nonetheless in this instance unlawful and in contravention of arts. III and IV of the state constitution because of the Legislature's failure to prescribe sufficient standards and criteria for the guidance and control of those to whom it assigned the licensing authority.[2]

While defendant premises this assertion of unconstitutionality in part upon art. IV of the constitution, he has not specified which of its several provisions or sections are allegedly violated, and we cannot assume that he has invoked them all, as many are completely irrelevant to his contentions. In these circumstances his failure to particularize makes it improper for us to consider his objections to the extent they are premised upon a claimed contravention of art. IV. *State* v. *Harris,* 111 R. I. 147, 300 A.2d 267 (1973); *Haigh* v. *State Board of Hairdressing,* 74 R. I. 106, 108-09, 58 A.2d 925, 926-27 (1948); *Ravenelle* v. *City of Woonsocket,* 73 R. I. 270, 275-76, 54 A.2d 376, 379 (1947).

There still remains, however, the necessity of considering defendant's objections as they relate to art. III. That provision declares that the powers of government shall be distributed among the legislative, executive and judicial departments and has been treated, at least impliedly, as prohibiting an unlawful delegation of the legislative power. *See Di Traglia* v. *Daneker,* 83 R. I. 227, 232, 115 A.2d

---

[2]In pursuing this argument in the trial court, defendant failed to invoke arts. III and IV, but instead called upon art. I, sec. 10. He did not, however, indicate whether his reference was to the state or Federal Constitution and if to the state constitution, which of its several provisions he was pinpointing. For this reason, we do not consider whether defendant's rights under art. I, sec. 10 of either constitution have been violated.

345, 348 (1955); *Thayer Amusement Corp.* v. *Moulton,* 63 R. I. 182, 200, 7 A.2d 682, 690 (1939); *State* v. *Conragan,* 58 R. I. 313, 322-23, 192 A. 752, 756-57 (1937).

We approach the problem by examining the structure of the pertinent legislation, the "Firearms Act" so-called (chapter 47 of title 11). While it is in general nonrestrictive as to the right of persons generally to purchase, own, carry, transport or have in their possession or control most kinds of firearms, some of its provisions are prohibitory as to certain classes of persons,[3] while another says that no person, unless exempted from the licensing requirements by §11-47-9 or §11-47-10,[4] "* * * shall, without a license therefor * * * carry a pistol or revolver in any vehicle or conveyance or on or about his person whether visible or concealed, except in his dwelling house or place of business or on land possessed by him * * *." Section 11-47-8.

The licensing procedures are found in §11-47-11 and §11-47-18, and they authorize one 21 years of age or over to carry a pistol or revolver on his person upon the issuance of a permit

　　　　(1) by the licensing authorities[5] of any city or town

---

[3]Thus, one convicted of a crime of violence or a fugitive from justice or a mentally incompetent person, a drug addict or an habitual drunkard may not carry or possess any firearm (§11-47-5 and §11-47-6), and an unnaturalized foreign-born person who has resided in the United States for less than ten years may not possess or carry a pistol or revolver (§11-47-7).

[4]Those exempted by §11-47-9 'and §11-47-10 include, for example, police officers, sheriffs and their deputies, prison or jail wardens, members of the armed forces when on duty and those carrying or transporting pistols or revolvers between their homes or places of business and a bona fide target practice range.

[5]"Licensing authorities" are defined in §11-47-2 to mean "* * * the board of police commissioners of a city or town where such board has been instituted, the chief of police or superintendent of police of other cities

126

with respect to a concealed weapon if satisfied "* * * that the applicant has good reason to fear an injury to his person or property or has any other proper reason for carrying a pistol, and that he is a suitable person to be so licensed"; and

(2) by the Attorney General, with respect to a weapon, whether concealed or not "upon proper showing of need for same."

Neither the local licensing authorities nor the Attorney General, moreover, may issue a license unless the applicant has qualified in the use of the weapon (§11-47-15), and has posted a surety bond conditioned on his keeping the peace and being of good behavior (§11-47-12). And in any event a license may at any time be cancelled by the issuing authorities for "just cause." Section 11-47-13.

Clearly, the Legislature, in the interest of the public safety and welfare, was empowered to enact such legislation, *United States* v. *Miller*, 307 U.S. 174, 59 S.Ct. 816, 83 L.Ed. 1206 (1939). It was also authorized, moreover, to delegate a portion of that power to public bodies and officers in order to give operative effect to the antecedent legislation, *City of Warwick* v. *Warwick Regular Firemen's Ass'n*, 106 R. I. 109, 112-13, 256 A.2d 206, 208-09 (1969), and, after establishing primary standards, to leave it to those delegates to determine the existence or nonexistence of the facts upon which the enactment is intended to operate, *State* v. *Conragan, supra* at 322, 192 A. at 757, or as Chief Justice Marshall said almost two centuries ago, to permit them "to fill up the details." *Wayman* v. *Southard*, 23 U.S. 1, 19, 6 L.Ed. 253, 263 (1825).

The question for us, then, is not one of the Legislature's

and towns having a regular organized police force, and in towns where there is no chief of police or superintendent of police it shall mean the town clerk who may issue licenses upon the recommendation of the town sergeant, and it shall also mean any other person or body duly authorized by the city or town charter or by state law."

power to delegate the licensing authority under the Firearms Act, but of whether in assigning that authority it prescribed standards which clearly and reasonably limit the exercise of the assigned authority to the public safety and welfare sought to be served, *State ex rel. Colvin* v. *Lombardi,* 104 R. I. 28, 31-32, 241 A.2d 625, 627 (1968); *accord, First Federal Savings & Loan Ass'n* v. *Langton,* 105 R. I. 236, 244, 251 A.2d 170, 175 (1969). And in testing for the validity of that legislative action we apply a "rule of reason," *State* v. *Berberian,* 100 R. I. 413, 416, 216 A.2d 507, 510 (1966), and an "intelligible principle." *J. W. Hampton, Jr. & Co.* v. *United States,* 276 U.S. 394, 409, 48 S.Ct. 348, 352, 72 L.Ed. 624, 630 (1928).

Do the licensing provisions of the Firearms Act meet these requirements? Even our brief summary of some of the Act's essential provisions clearly evidences that the goal of the Legislature was to prevent criminals and certain other persons from acquiring firearms generally and handguns in particular without at the same time making unduly difficult such acquisition for other members of society. To accomplish its purposes, the Legislature, among other things, established licensing procedures and delineated the broad parameters within which those selected by it might determine the facts upon which the right to be licensed to carry a handgun hinged.

Thus, the Legislature provided that an applicant for a license must show, for example, that he has a "need" or "proper reason" for carrying such a weapon, that he is qualified to use it, and that he is an otherwise "suitable

person."[6] But to make those determinations, calls for an exercise of the fact-finding function which the Legislature obviously is in no position to supply. Hence, to give operative effect to the law and to prevent it from becoming a nullity required a delegation of authority which, in this instance, the Legislature made to those who by reason of their training and experience and the facilities at their command were probably more competent than any others to exercise the delegated power.

In the circumstances and for the reasons stated, it seems abundantly clear to us that the Legislature in assigning the licensing authority under the Firearms Act did not unlawfully delegate its power or contravene art. III of the state constitution. *Matthews* v. *State*, 237 Ind. 677, 148 N.E.2d 334 (1958).

The defendant's exceptions are overruled, and the case is remitted to the Superior Court for further proceedings.

*Richard J. Israel,* Attorney General, *Donald P. Ryan,* Asst. Attorney General, *R. Raymond Greco,* Special Asst. Attorney General, for plaintiff.

*Aram K. Berberian,* for defendant.

---

[6]While one of the limitations imposed by §11-47-11 on the licensing authority of the local authorities is that the applicant be a "suitable person," §11-47-18 does not similarly restrict the licensing authority of the Attorney General. Inasmuch as the other standards established for the Attorney General's guidance are legally sufficient, there is no necessity for inquiry as to whether "a suitability" requirement is included by implication as a requisite under §11-47-18.