STATE

v.

**Conrad T. JOHNSON, Jr.**

**No. 79–300–C.A.**

Supreme Court of Rhode Island.

May 7, 1980.

Dennis J. Roberts II, Atty. Gen., Barry N. Capalbo, Sp. Asst. Atty. Gen., for plaintiff.

Aram K. Berberian, Warwick, for defendant.

## OPINION

BEVILACQUA, Chief Justice.

The defendant, Conrad T. Johnson, Jr., was tried before a justice of the Superior Court sitting without a jury and convicted of carrying concealed upon his person, in violation of G.L.1956 (1969 Reenactment) § 11–47–42, as amended by P.L.1975, ch. 278, § 1, a knife having a blade more than three inches in length. The defendant appeals from said judgment.

On March 18, 1978, Patrolman Kevin P. Collins was on duty from midnight to eight o'clock in the morning. At approximately 12:50 a. m. that day, while patrolling on Warwick Avenue in the vicinity of Donabedian's Fruit Stand, he "observed a male and a female apparently having a very loud argument with the female screaming loudly." Patrolman Collins recognized the male as Conrad T. Johnson, Jr. As Patrolman Collins alighted from his patrol car to speak with the parties, Johnson approached him and, in response to an inquiry by the police officer, began to explain that there was no problem and no need for his intervention. Patrolman Collins testified at defendant's trial that defendant's approach toward him was "aggressive" and "highly unusual" in that at all times defendant's right hand was kept pocketed in a coat he was wearing but

his left hand was not pocketed. Moreover, defendant had an "obvious drunken appearance." When defendant was about two feet from him, Patrolman Collins asked defendant to unpocket his right hand. The defendant responded by answering "No" and then turning around and walking away from the officer. Patrolman Collins countered by calling and then walking toward defendant, who, with his right hand still pocketed, had turned and stood facing the patrolman. At this point Patrolman Collins again asked defendant to unpocket his right hand. This time defendant did remove his hand from the coat pocket. Patrolman Collins testified that the unpocketed hand was not empty but held a knife, which he immediately took from defendant.

I

At the conclusion of Patrolman Collins's testimony, defendant made a motion to strike the portion of the testimony which concerned defendant's possession of the seized knife. The defendant also objected to the admission of the knife into evidence. In respect to both the motion to strike and the objection, defendant argued below and continues to assert here that the pertinent testimony and the knife were the products of an unlawful seizure and search of defendant and therefore inadmissible fruit of the poisonous tree.[1] *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). The trial justice, however, disagreed and denied both the motion to strike and the objection. He first found that there had been no arrest of defendant prior to the appearance of the knife. He then found that the testimony and the knife were the product of a lawful "stop and frisk" under the rule enunciated in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

The defendant contends that the evidence in question was the product of an unlawful

---

1. The defendant's motion to strike and his objection on the ground that the evidence in question was the product of an unlawful seizure and search of defendant, in effect, constituted a motion to suppress, which under Rule 41(f) of the Superior Court Rules of Criminal Procedure must be made before trial but in the trial court's discretion may be entertained at trial. In light of defendant's pretrial motion to suppress contained in the record, we surmise that this is what occurred.

search and seizure because Officer Collins did not have reason to believe that defendant was acting suspiciously and was armed and dangerous, which reason to believe is the precondition to a lawful stop and frisk under the *Terry* rule. We need not reach this issue, however, because in light of the record before us, we find that defendant was neither seized nor searched as these terms are defined for the purposes of the Fourth Amendment of the United States Constitution or Art. I, § 6 of the Rhode Island Constitution.

█ It is well recognized that "not all personal intercourse between policemen and citizens involves 'seizures' of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." *Terry v. Ohio*, 392 U.S. at 19 n. 16, 88 S.Ct. at 1879 n. 16, 20 L.Ed.2d at 905 n. 16.[2] In light of the record before us, we find that defendant's liberty of movement was not so restrained at any time prior to the appearance of the knife. We thus may conclude that up to that point no intrusion upon defendant's constitutionally protected liberty of movement had occurred. Similarly, there is no evidence on the record to support defendant's contention that the knife was produced as a result of a search by Patrolman Collins. Rather, the evidence indicates that defendant acting on his own put the knife in open view. And having so revealed the knife, defendant relinquished his constitutional protection, for it is well settled that what a person knowingly exposes to the public is not a subject of the Fourth Amendment protection. *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *see Lewis v. United States*, 385 U.S. 206, 87 S.Ct. 424, 17 L.Ed.2d 312 (1966); *United States v. Lee*, 274 U.S. 559, 47 S.Ct. 746, 71 L.Ed. 1202 (1927); *compare Hester v. United States*, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924). We have therefore concluded that

neither Patrolman Collins's testimony concerning defendant's possession of the knife nor the discovery of the knife itself was the product of an unlawful seizure or search of defendant.

## II

The defendant stipulated at trial that the knife taken from him had a blade in excess of the statutory maximum length set forth in § 11–47–42. The defendant nonetheless challenges his conviction on the ground that the mere concealed carrying of such a knife, without an intent to use it unlawfully, is insufficient to sustain a conviction under § 11–47–42.

█ In support of this contention, defendant first argues that § 11–47–42 by its own terms does not punish the mere concealed carrying of such a knife. We do not agree. Section 11–47–42, in pertinent part, plainly states:

> "nor shall any person wear or carry concealed upon his person, any of the aforesaid instruments or weapons, or any razor, or knife of any description having a blade more than three inches in length * * *."

The defendant, however, also argues in the alternative that if § 11–47–42 does punish such mere concealed carrying, then a literal application of the statute leads to an absurd and unreasonable result. The defendant asks this court to avoid such result by construing the statute otherwise because it is presumed that the Legislature did not intend to enact an absurdity.

█ We do not disagree with defendant's argument that statutes should never be applied literally if to do so would result in a patent absurdity since it is presumed that the Legislature did not intend to enact an absurdity. *State v. Haggerty*, 89 R.I. 158, 151 A.2d 382 (1959). However, defendant's reliance on this principle is misplaced and not applicable in the instant case. The

---

2. It is only when "an individual is physically or constructively detained by virtue of a significant interruption of his liberty of movement as a result of police action, [that] that individual has been seized within the meaning of the Fourth Amendment * * *." *People v. Cantor*, 36 N.Y.2d 106, 112, 324 N.E.2d 872, 876, 365 N.Y.S.2d 509, 515 (1975).

basis of defendant's contention that a literal application of the statute leads to an absurdity is the fact that under the disputed provision of the statute, according to defendant, "the traditionally law abiding class can be penalized for [mere] possession of instruments ordinarily associated with lawful use." This is a misconception of the purpose of the provision of § 11–47–42 at issue here. The purpose of that provision is to protect the public from the peril of the enumerated instruments or weapons when they are concealed about the person. The Legislature under its constitutional power can in the interest of public safety and welfare enact such legislation. *State v. Storms*, 112 R.I. 121, 308 A.2d 463 (1973). And although criminal intent or an evil state of mind is an essential ingredient in crimes derived from the common law, the conduct at issue here was not an offense at common law, *see Cooke v. United States*, 275 F.2d 887 (D.C.Cir.1960); thus all that is needed here is proof that the proscribed act has been committed, *State v. Gilman*, 110 R.I. 207, 213, 291 A.2d 425, 429 (1972).[3]

In light of the foregoing, it is evident that the statute is free of any ambiguity and conveys a definite and sensible meaning; and, therefore, there is no need to construe it. *See Berberian v. Town of Westerly*, R.I., 381 A.2d 1039 (1978).

The defendant's appeal is denied and dismissed, the judgment of conviction appealed from is affirmed, and the case is remanded to the Superior Court.

**3.** *See also State v. Tutalo*, 99 R.I. 14, 205 A.2d 137 (1964) (recognizing power of the Legislature to prescribe the evidence that shall be received and the effect of that evidence in the state courts).