DECISION
Before the Court is the Defendants' Motion to Dismiss pursuant to Rule 12(b)(6) of the Rhode Island Rules of Civil Procedure. The Defendants are Vincent McAteer, in his capactiy as Chief of the Rhode Island Bureau of Criminal Identification, and Sheldon Whitehouse, in his capacity as Rhode Island Attorney General ("Defendants"). Charles Mosby, Jr. and Steven Golotto ("Plaintiffs") object to the motion.
 Facts/Travel
The Plaintiffs, Charles H. Mosby, Jr. ("Mosby") and Steven Golotto ("Golotto"), filed the present action on December 22, 1999 seeking a declaratory judgment and other relief following a decision of the Attorney General's office to deny their separate applications to carry concealed weapons. According to the complaint, Mosby sought a gun permit to protect himself because he is a gun collector who travels at times with firearms and large sums of money. Golotto, a self-employed shopkeeper in Greenville, sought a gun permit because he also carries large sums of money and was concerned with the number of robberies in the area. Pursuant to the Firearms Act, Mosby's application was denied on March 25, 1999, and Golotto's application was denied on April 29, 1999. The letter denying their applications stated: "The Department of Attorney General has determined insufficient need to issue a permit for you to carry a concealable weapon as defined in § 11-47-18[1] of the General Laws of Rhode Island, 1956, as amended."
The Plaintiffs argue in the original complaint that the Defendants' denial of their applications violated the Administrative Procedure Act and violated the Plaintiffs' civil rights as guaranteed by Article I, Section 2, Section 5, and Section 22 of Rhode Island's Constitution. As a result, the Plaintiffs request that this Court grant a declaratory judgment or issue a writ of mandamus ordering Vincent McAteer or Sheldon Whitehouse to issue licenses to carry concealed weapons to the Plaintiffs. Alternatively, the Plaintiffs request that the Department of Attorney General: 1) provide a hearing to the Plaintiffs pursuant to R.I.G.L. § 42-35, 2) compel the Defendants to provide to Plaintiffs a written copy of the rules and procedures utilized in determining and ruling on applications, as well as past written decisions adjudicating applications for licenses, 3) compel the Attorney General to promulgate rules pursuant to the Administrative Procedure Act regarding the issuance of licenses to carry concealed weapons pursuant to R.I.G.L. § 11-47-18, and 4) award monetary damages, attorney fees and costs.
 The Firearm's Act
The Rhode Island Supreme Court has noted that the Legislature, in the interest of public safety and welfare, clearly was empowered to enact the Firearm's Act. See State v. Storms, 308 A.2d 463, 466 (R.I. 1973). The Court remarked that the Legislature was also authorized to "delegate a portion of that power to public bodies and officers in order to give operative effect to the antecedent legislation, and, after establishing primary standards, to leave it to those delegates to determine the existence or nonexistence of the facts upon which to operate." Id. In Storms, the Court found that "the Legislature in assigning the licensing authority under the Firearms Act did not unlawfully delegate its power or contravene art. III of the state constitution." Id. at 467. The Court stated that in order to "give operative effect to the [Act] and prevent it from becoming a nullity required a delegation of authority which, in this instance, the Legislature made to those who by reason of their training and experience and the facilities at their command were probably more competent than any others to exercise the delegated power." Storms at 466-67. The Court reasoned that the delegation of authority was accompanied by clear standards and licensing procedures which delineated the "broad parameters" which would serve to "reasonably limit the exercise of the assigned authority to the public safety and welfare to be served [by the Act]." Id. At 466-67.
 The Administrative Procedures Act
Defendants argue in their motion to dismiss that the Administrative Procedures Act ("APA") does not apply to the current action and that the Superior Court lacks jurisdiction to conduct judicial review of the Attorney General's initial decisions to grant or deny gun permits. Plaintiffs disagree and argue that not only is the Attorney General within the APA's definition of Agency, but applications under R.I.G.L. § 11-47-18(a) are "contested cases" as defined by the APA.
The APA was enacted in 1962 in order to "relieve the confusion that inhered in the administrative practice in this state by providing a uniform system of procedures and standards to regulate action within the agency affected and at the same time to uniformly regulate the scope of judicial review of agency action." Colonial Hilton Inns of New England, Inc. v. Rego, 284 A.2d 69, 71 (R.I. 1971) (citing New England Telephone and Telegraph Co. v. Fascio, 254 A.2d 758, 761 (R.I. 1969)).
Under section 42-35-15 of the APA, "judicial review is authorized for final orders in contested cases and certain other circumstances." Pine v. Clark, 636 A.2d 1319, 1325 (R.I. 1994). R.I.G.L. § 42-35-15
states in part:
 Judicial review of contested cases. — (a) Any person who has exhausted all administrative remedies available to him within the agency, and who is aggrieved by a final order in a contested case is entitled to judicial review under this chapter. This section does not limit utilization of or the scope of judicial review available under other means of review, redress, relief, or trial de novo provided by law. Any preliminary, procedural, or intermediate agency act or ruling is immediately reviewable in any case in which review of the final agency order would not provide an adequate remedy.
Furthermore, R.I.G.L. § 42-35-14(a) states "[w]henever the grant, denial, or renewal of a license is required to be preceded by notice and opportunity for hearing, the provisions of this chapter concerning contested cases apply." The Rhode Island Supreme Court has noted that an agency ruling or order "is only appealable under the APA if it was made as part of a `contested case'." Barrington School Committee v. Rhode Island State Labor Relations Bd., 608 A.2d 1126, 1131 (R.I. 1992).
A "contested case" under the APA is defined as "a proceeding, including but not restricted to ratemaking, price fixing, and licensing, in which the legal rights, duties, or privileges of a specific party are required by law to be determined by an agency after an opportunity for hearing." See R.I.G.L. § 42-35-1. Our Supreme Court has declared that a "hearing must be required by law in order for an administrative matter to constitute a contested case." Property Advisory Group, Inc. V. Rylant,636 A.2d 317, 318 (R.I. 1994) (citing Barrington School Committee v. Rhode Island State Labor Relations Bd., 608 A.2d 1126, 1131 (R.I. 1992); Lynch v. Gontarz, 386 A.2d 184, 187 (R.I. 1978); see also Pine v. Clark,636 A.2d 1319, 1325 (R.I. 1994) (holding that the Superior Court lacked subject-matter jurisdiction because there was no hearing requirement and the agency proceeding was not a contested case)).
In the present case, the defendants state that the plain language of R.I.G.L. § 11-47-18 does not require a hearing or a notice and opportunity to be heard before a gun permit is denied or granted, and therefore, the APA's contested case and judicial review provisions are not applicable. The defendants rely specifically on R.I.G.L. §42-35-14 to argue that a predetermination hearing must be required by law in order for a grant or denial of a license to be subject to the APA contested case provisions. The defendants also maintain that Rhode Island law does not require such notice or opportunity for a hearing when granting or denying a license to carry a concealed weapon.
The plaintiffs, on the other hand, claim that applications under R.I.G.L. § 11-47-18 are definable as contested cases that ultimately make them subject to the provisions of the APA. In support of that argument, the plaintiffs argue that a proceeding may be considered a contested case even when the applicable statute does not expressly provide for a hearing. They rely on Colonial Hilton Inns of New England, Inc. v. Rego and Considine v. Department of Transportation in support of that argument.
Also, the plaintiffs, based upon their reading of State v. Storms, assert that an applicant for a license to carry a concealed weapon is entitled under Rhode Island law to administrative due process in the form of a hearing.
The most recent Rhode Island case law indicates that a hearing is required in order for an "administrative matter to constitute a contested case," thereby subjecting it to the provisions of the APA. Property Advisory Group, Inc. V. Rylant, 636 A.2d 317, 318 (R.I. 1994) (citing Barrington School Committee v. Rhode Island State Labor Relations Bd.,608 A.2d 1126, 1131 (R.I. 1992); Lynch v. Gontarz, 386 A.2d 184, 187(R.I. 1978); see also Pine v. Clark, 636 A.2d 1319, 1325 (R.I. 1994) (holding that the Superior Court lacked subject-matter jurisdiction because there was no hearing requirement and the agency proceeding was not a contested case)). With that in mind, there is nothing in the Firearms Act that suggests an applicant is entitled to a hearing prior to the denial or grant of a license to carry a concealed weapon. Without the requisite hearing requirement, the application process at the Attorney General's office for a license to carry a concealed weapon cannot be considered a contested case that would subject it to the APA. Therefore, the Superior Court is without subject-matter jurisdiction to review the grant or denial of an application to carry a concealed weapon, and judicial review of a decision from the Attorney General to grant or deny a license under R.I.G.L. § 11-47-18 should be sought from the Supreme Court.
The next issue, then, is whether the right to carry a concealed weapon should be afforded such constitutional protection as to require a hearing prior to granting or denying a license. The Defendants claim that the Plaintiffs have no cognizable property or liberty interest when applying for a license to carry a concealed weapon that would require procedural due process protections. The Plaintiffs state that applying for a license to carry a concealed weapon under the Firearms Act does in fact implicate a constitutional right that requires due process considerations. In support of that argument, the Plaintiffs argue that the right to bear arms contained in Article I, Section 22 of the Rhode Island Constitution confers a right to carry a licensed weapon under the Firearms Act which demands due process.
Indeed, the concept of due process is deeply ingrained into the fabric of our society. It has been thoroughly discussed by both the Rhode Island Supreme Court and the Supreme Court of the United States on countless occasions. In one case in particular, while addressing the question of whether an unclassified employee was entitled to a hearing prior to termination, the Rhode Island Supreme Court cited the United States Supreme Court when it declared that:
 The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property. When protected interests are implicated, the right to some kind of prior hearing is paramount. But the range of some kind of protected interest is not infinite. . . . But, to determine whether due process requirements apply in the first place, we must look not to the `weight' but to the nature of the interest at stake. (citation omitted) We must look to see if the interest is within the Fourteenth Amendment's protection of liberty and property." Lynch v. Gontarz 386 A.2d 184, 187 (R.I. 1978) (citing Board of Regents of State Colleges v. Roth, 408 U.S. 564, 569-71 (1972)).
"The fourteenth amendment's procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits." Id. at 188 (citing Board of Regents at 576). Furthermore, "[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim to it." Id. Property interests "are created and their dimensions defined by existing rules or understandings that stem from an independent source such as state law rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." Id. (citing Board of Regents at 577).
When defining what constitutes a liberty interest, the United States Supreme Court has stated:
 While this court has not attempted to define with exactness the liberty . . . guaranteed (by the Fourteenth Amendment), the term has received much consideration and some of the included things have been definitely stated. Without doubt, it denotes not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, to establish a home and bring up children, to worship God according to the dictates of his own conscience, and generally to enjoy those privileges long recognized . . . As essential to the orderly pursuit of happiness by free men. Board of Regents at 572 (citations omitted).
The Court has also noted that "[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and opportunity to be heard are essential." Id. (citations omitted) Therefore, if the Plaintiffs can show a state recognized property or liberty interest in applying for a license under R.I.G.L. § 11-47-18, then they are entitled to due process protections and should be afforded a hearing prior to the grant or denial of that license. See Medina v. Rudman, 545 F.2d 244, 250-51 (1st Cir. 1976)
 Property Interest
As stated earlier, there is nothing in the Firearms Act that suggests an applicant is entitled to a hearing prior to the denial or grant of a license to carry a concealed weapon. Courts have noted that "whether a statute creates a property interest in concealed weapons licenses depends largely upon the extent to whether the statute contains mandatory language that restricts the discretion of the [issuing authority] to deny licenses to applicants who claim to meet the minimum requirements." Erdelyi v. O'Brien, 680 F.2d 61, 63 (9th Cir. 1982) (internal quotations omitted); See also, Medina, supra. "Where state law gives the issuing authority broad discretion to grant or deny license applications in a closely regulated field, initial applicants do not have a property right in such licenses protected by the Fourteenth Amendment." Id. The First Circuit Court of Appeals in Medina, when interpreting New Hampshire's greyhound licensing laws, found that where a statute states that an authority `may' issue a license after certain requirements have been met, that statute does not create an entitlement or a property right in that license. Medina at 251 (citing Board of Regents, supra.).
In R.I.G.L. § 11-47-18, the Legislature provided that the Attorney General `may' issue a license upon certain requirements, not `shall' issue a license. Generally, under Rhode Island statutory construction, the word `may' connotes a discretionary or permissive provision rather than a mandatory one. See Quality Court Condominium Ass'n. v. Quality Hill Development Corp., 641 A.2d 746 (R.I. 1994), State v. Taylor,272 A.2d 680 (R.I. 1971). That exact intent seems to be present here. Rather than creating an entitlement to carry a pistol or revolver, the Legislature indicated merely that the Attorney General may issue a license at its discretion. Therefore, the Plaintiffs could not derive a property interest based upon section 11-47-18 of the Firearms Act.[2]
The next question then is whether the right to obtain a license to carry a gun in Rhode Island is so fundamental as to elicit protection even though it is not explicitly defined in Rhode Island's laws.
Article I, Section 22 of the Rhode Island Constitution states that "[t]he right of the people to keep and bear arms shall not be infringed." The Plaintiffs, relying on legislative intent and our Supreme Court's interpretation of section 11-47-18 in State v. Storms, argue that Article 1, Section 22 does indeed create a property interest which entitles them to due process protection.
In State v. Storms, the Supreme Court held that "the Legislature in assigning the licensing authority under the Firearms Act did not unlawfully delegate its power or contravene art. III of the state constitution." Storms at 467. The Court, however, also gave a strong indication as to how the case would have turned out if the plaintiff had challenged the Firearms Act under Article I, Section 22 of Rhode Island's Constitution. The defendant in Storms was convicted in Superior Court of unlawfully carrying a pistol without a license. In response to his arguments concerning the constitutionality of the Firearms Act, the Court stated:
 The defendant's initial challenge is that the legislation which makes it unlawful to carry a pistol or revolver on his person, unless licensed to do so, infringes upon the right of self defense guaranteed to all persons by art. I, sec. 23 of the state constitution. That challenge may be summarily rejected since the constitutional provision relied upon declares only that the enumeration of rights in the Declaration of Rights `shall not be construed to impair or deny others retained by the people,' and manifestly this guarantee in no sense assures a right of self defense. Moreover, defendant, even had he relied upon art I, sec. 22 of the state constitution which safeguards the right of people to keep and bear arms, might not be on sound ground. Then, he would have been burdened with persuading us of the weakness of what is apparently the prevailing view, viz., that a constitutional guarantee to keep and bear arms is not infringed upon by legislation which, in broad terms, forbids the unlicensed carrying of a pistol or revolver upon one's person excepting only in his home and place of business or upon his land." Storms at 464.
Article I, Section 22 of Rhode Island's Constitution only states that "[t]he right of the people to keep and bear arms shall not be infringed." It does not guarantee a right of self defense or a right to carry a weapon. Furthermore, the Court in Storms found that the legislature, "in the interest of public safety and welfare," did not "unlawfully delegate its power" in assigning licensing authority under the Firearms Act. Based upon the language in Storms and Rhode Island's Constitution, this Court is unable to declare that a person in Rhode Island has a fundamental right to carry a weapon outside the limits of his or her own land or business with or without a license which, in turn, would entitle them to due process protection when applying for a license.
 Liberty Interest
Both Plaintiffs have indicated that they applied for licenses under the Firearms Act because they tend to travel and carry large sums of money. Neither Plaintiff indicated, however, that he would not be able to continue his business or lose his livelihood if he was unable to obtain a license to carry a weapon. See Board of Regents, 408 U.S. at 573-74. There is nothing in the facts that suggest the Plaintiffs would be foreclosed of their employment opportunities if their applications were denied. Id.
Nor did either Plaintiff state that his reputation or integrity would suffer if the Attorney General's office decided to deny his application. Id. Other than the mere fact of not being able to carry a weapon, no stigma has attached to the denial of their applications. Therefore, the Plaintiffs do not have a liberty interest in an application to carry a weapon in Rhode Island.
 Conclusion
For the foregoing reasons, this Court finds that an application to carry a weapon under R.I.G.L. § 11-47-18 does not provide for a hearing, nor is a hearing required under state law or under due process considerations. Under Rhode Island law, a person does not have a legitimate claim to a license to carry a weapon that would require a hearing. However, a hearing must be required by law in order for an administrative matter to constitute a contested case, and there must be a contested case in order for this Court to have jurisdiction. See Pine v. Clark, 636 A.2d 1319, 1325 (R.I. 1994); R.I.G.L. § 42-35-1, et seq. That is not the case here. Therefore, this Court is without subject matter jurisdiction, and the Defendants' motion to dismiss is granted. Counsel shall present an order and judgment consistent with the provisions of this decision.
[1] R.I.G.L. § 11-47-18 states in full:
 11-47-18. License or permit issued by attorney general on showing of need — Issuance to retired police officers. —
 (a) The attorney general may issue a license or permit to any person twenty-one (21) years of age or over to carry a pistol or revolver, whether concealed or not, upon his or her person upon a proper showing of need, subject to the provisions of §§ 11-47-12 and 11-47-15, that license or permit may be issued notwithstanding the provisions of § 11-47-7.
 (b) All state police officers and permanent members of city and town police forces of this state who have retired in good standing after at least twenty (20) years of service or retired in good standing due to a physical disability other than psychological impairment, may be issued a license or permit by the attorney general subject to the provisions of §§ 11-47-12 and 11-47-15. Any member of the licensing authority, and its agents, servants, and employees shall be immune from suit in any action, civil or criminal, based upon any official act or decision, performed or made in good faith in issuing license or permit under this chapter.
[2] This is not to say that once a person has a license a hearing would not be required to revoke it. See Medina at 250 ("once a license, or the equivalent, is granted, a right or status recognized under state law would come into being, and the revocation of the license would require notice and hearing.")