Norman T. Gadomski, Jr.          :

                    v.                    :

Joseph H. Tavares, Chief of Police for the     :
      City of East Providence.


NOTICE:   This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Norman T. Gadomski, Jr.　　　　　　:

v.　　　　　　　　　　　　:

Joseph H. Tavares, Chief of Police for the　：
　　City of East Providence.


Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Indeglia, for the Court.** The petitioner, Norman T. Gadomski, Jr. (Gadomski or petitioner), seeks review by petition for common law writ of certiorari of a decision of the respondent, Joseph H. Tavares (Tavares or respondent), the Chief of Police for the City of East Providence (city or East Providence), denying the petitioner's application for a license to carry a concealed weapon pursuant to G.L. 1956 § 11-47-11. On April 2, 2015, this case came before the Supreme Court sitting at Rhode Island College in the City of Providence, for oral argument, pursuant to an order directing the parties to appear and show cause why the issues raised in this petition should not be decided without further briefing and argument. After considering the parties' submitted memoranda and oral arguments, we are satisfied that cause has not been shown. Accordingly, we shall decide the petition at this time without further briefing or argument. For the reasons set forth herein, the decision denying the petitioner's application is quashed. Further, the respondent is directed to issue a new decision on the petitioner's application not inconsistent with this opinion.

# I

## Facts and Travel

In early 2012, Gadomski, a resident of East Providence, submitted to the East Providence Police Department an application for a license to carry a concealed weapon. The application indicated that Gadomski wanted a license because he occasionally works alone handling cash and expensive tools and equipment, carries cash when purchasing firearms for his collection, and because he camps, hikes, and bikes alone. The application also stated that Gadomski wanted a license from this state, in which he resides, so that he could obtain a nonresident license from Massachusetts, which would enable him to join a nearby gun club in Massachusetts. In response to a question in the application asking if the applicant had ever been arrested, petitioner replied in the affirmative, and attached his Criminal Offender Record Information (CORI) report from Massachusetts. The CORI report indicated that petitioner had been arraigned on misdemeanor charges twice as an adult. The first charge was for possession of alcohol by a minor, which was dismissed with a payment into the Victim-Witness Fund and court costs. The second charge was for destruction of property. Initially, a continuance without a finding was entered, and then later the charge was dismissed, again with a payment into the Victim-Witness Fund and court costs.

On March 20, 2012, Gadomski was interviewed by Tavares regarding petitioner's application. Gadomski appeared at the interview without counsel. No record of the interview was transcribed or otherwise recorded. On April 27, 2012, petitioner, through counsel, sent a letter to Tavares regarding petitioner's application. The letter indicated that petitioner had not heard anything from Tavares since the interview and requested that a permit be issued to him. On July 9, 2012, petitioner's counsel sent a second letter to Tavares indicating that there still had not been any response from the city regarding petitioner's application. This second letter

included copies of Gadomski's concealed firearm permit issued by the State of Utah and his federal firearm license to be a collector of curios and relics, which petitioner had acquired since submitting his initial application. The petitioner asserts that there was no response to this letter.

On August 21, 2012, petitioner's counsel sent a third letter to Tavares requesting copies of certain records pursuant to G.L. 1956 § 38-2-2. The letter requested copies of all East Providence records for the years 2007 through 2012 showing the number of applications for a license to carry a concealed weapon, the number of applications for such a license that were granted, and the time between receipt of an application and the issuance of a permit or denial of a request. Subsequently, Gadomski's counsel received a letter from Tavares responding to petitioner's requests. The response indicated that, to Tavares's knowledge, no license to carry a concealed weapon had been issued within the last decade and that, in order to receive a license, all requirements of the application must be met. On September 11, 2012, petitioner's counsel sent another letter to Tavares indicating receipt of Tavares's response and expressing frustration with the handling of petitioner's application. The letter requested the issuance of the license to Gadomski or in the alternative, specification of the legal basis for refusal to do so. Tavares did not respond to this letter.

On October 5, 2012, Gadomski filed a petition for a writ of mandamus in the Providence County Superior Court seeking an order requiring Tavares to rule on Gadomski's application. In the interim, while Gadomski's mandamus petition was still pending, Gadomski sent Tavares a copy of several other firearm-related certifications that he had acquired, including a pistol/revolver license from the State of New Hampshire. On January 16, 2013, an East Providence police officer hand-delivered a letter to Gadomski, which served as official notice that Gadomski's application for a license to carry a concealed weapon had been denied. In light

of this development, on January 18, 2013, the Superior Court denied Gadomski's mandamus petition on the grounds that the denial had rendered the issue moot.

On February 15, 2013, Gadomski filed another action in the Superior Court, this time seeking review of the denial of his application pursuant to the Administrative Procedures Act, G.L. 1956 § 42-35-15, and later, added a request for mandamus relief. Finding that Mosby v. Devine, 851 A.2d 1031 (R.I. 2004), was controlling, the Superior Court determined that it was without subject matter jurisdiction to entertain petitioner's appeal and, therefore, dismissed the action.

The following year, on February 20, 2014, Gadomski filed a petition for writ of certiorari with this Court, which we granted on June 12, 2014.

## II

### Standard of Review

In Mosby, 851 A.2d at 1048, we stated that "if a license is refused on the ground that a person is not suitable, th[at] determination is subject to review by this Court on certiorari." Thus, petitioner has invoked the proper vehicle for judicial review of the denial of his application.

It is well settled that "[o]ur review of a case on certiorari is limited to an examination of the record to determine if an error of law has been committed." Cruz v. Mortgage Electronic Registration Systems, Inc., 108 A.3d 992, 995 (R.I. 2015) (quoting State v. Poulin, 66 A.3d 419, 423 (R.I. 2013)).

- 4 -

## Discussion

While the legal landscape surrounding the procurement of a license under the Firearms Act, chapter 47 of title 11, is far from saturated, we do not write on an entirely clean slate. In State v. Storms, 112 R.I. 121, 126-27, 308 A.2d 463, 466 (1973), this Court analyzed the propriety of the delegation of legislative power to licensing authorities under the Firearms Act. We noted that "our brief summary of some of the Act's essential provisions clearly evidences that the goal of the Legislature was to prevent criminals and certain other persons from acquiring firearms generally and handguns in particular without at the same time making unduly difficult such acquisition for other members of society." Id. at 127, 308 A.2d at 466. We recognized that, in order to effectuate that intent, among other provisions, the Firearms Act "established licensing procedures and delineated the broad parameters within which those selected by it might determine the facts upon which the right to be licensed to carry a handgun hinged." Id. Further, we acknowledged that certain determinations required under the Firearms Act "call[ ] for an exercise of the fact-finding function." Id. at 128, 308 A.2d at 466.

Over a quarter-century later, in Mosby, we commented further on the licensing scheme established by the Firearms Act. There, we recognized that "[t]wo separate and distinct licensing procedures are set forth in the Firearms Act." Mosby, 851 A.2d at 1047. We observed that the licensing procedure in § 11-47-18, which was at issue in Mosby, "provides for the discretionary grant of a firearms license by the [D]epartment [of the Attorney General] 'upon a proper showing of need' * * *." Mosby, 851 A.2d at 1047 (quoting § 11-47-18). In contrast, we noted that § 11-47-11, which grants local officials the power to issue licenses, "is mandatory—an

applicant who meets the criteria set forth in § 11-47-11 is entitled to a gun permit." Mosby, 851 A.2d at 1047.

There are three components to the statutory scheme set forth in § 11-47-11: (1) an age and residency requirement; (2) a reason requirement; and (3) a suitability requirement. Each of these components must be satisfied in order for a license or permit to be issued under § 11-47-11. To satisfy the age and residency requirement, an applicant must be twenty-one years of age or older and have either (i) a bona fide residence or place of business within the city or town where applying, or (ii) a bona fide residence within the United States and a license or permit to carry a pistol or revolver concealed upon his or her person issued by the authorities of any other state or subdivision of the United States. The reason requirement demands that an applicant has either (i) a good reason to fear an injury to his or her person or property, or (ii) any other proper reason for carrying a pistol or revolver. Lastly, the suitability requirement necessitates that all applicants must be a "suitable person" to be licensed.

Notwithstanding the mandatory nature of § 11-47-11, there are certain individuals who may not be issued a license as a matter of law. See §§ 11-47-5, 11-47-6, 11-47-7, and 11-47-15.[1] Further, while issuance of a license under § 11-47-11 is mandatory if an applicant has satisfied the statutory criteria, whether an applicant has satisfied such criteria "involves an exercise of discretion" on the part of local officials. Mosby, 851 A.2d at 1048. In Mosby, 851 A.2d at 1047-48, we identified the key discretionary component of § 11-47-11 as the determination of whether an applicant has met the suitability requirement. In Storms, 112 R.I. at 128, 308 A.2d at 467, we opined that the Legislature vested local licensing authorities with the power to make such a determination because such individuals "by reason of their training and experience and

---

[1] General Laws 1956 § 11-47-5 (persons convicted of crime of violence or who are fugitives from justice); § 11-47-6 (mental incompetents and drug addicts); § 11-47-7 (illegal aliens); § 11-47-15 (persons who have failed to meet minimum firing qualification score).

the facilities at their command [are] probably more competent than any others to exercise the delegated power." Accordingly, if the local licensing authority determines that an applicant is unsuitable, "§ 11-47-11 vests the local licensing authority with discretion to reject [the] application * * *." Mosby, 851 A.2d at 1047-48.

Nonetheless, in Mosby, 851 A.2d at 1050, we proclaimed that "[a]s a matter of policy, this Court will not countenance any system of permitting under the Firearms Act that would be committed to the unfettered discretion of an executive agency." Indeed, we noted that any rights flowing from article 1, section 22 of the Rhode Island Constitution[2] would be "illusory, of course, if [they] could be abrogated entirely on the basis of an unreviewable unrestricted licensing scheme." Mosby, 851 A.2d at 1050. To prevent such an occurrence, we opined that "certain procedural steps must be employed to allow a meaningful review" of licensing decisions by this Court. Id. at 1051. Specifically, we held that, under § 11-47-18, "[a] rejected applicant is entitled to know the evidence upon which the department based its decision and the rationale for the denial." Mosby, 851 A.2d at 1051. It follows a fortiori that a rejected applicant under § 11-47-11 is also entitled to such information.

Here, while respondent has provided slightly more substance in his denial letter than the denial letter[3] in Gendreau v. Canario, No. 2013-55-M.P., 2013 WL 6230071, at *1 (R.I., Sept. 18, 2013) (mem.), the denial letter proffered by respondent is still not a model of thoroughness.

---

[2] Article 1, section 22 of the Rhode Island Constitution provides: "The right of the people to keep and bear arms shall not be infringed."

[3] The letter in Gendreau v. Canario, No. 2013-55-M.P., 2013 WL 6230071, at *1 (R.I., Sept. 18, 2013) (mem.), stated in pertinent part:

> "After carefully reviewing the application and receiving a recommendation from the panel which interviewed you with regards to your application for a concealed weapon permit, it is with regret that I advise you that I feel that you do not meet the criteria outlined in 11-47-11 of the General Laws of Rhode Island as amended, as well as Bristol Police Department's guidelines which would justify me issuing you a concealed weapons permit."

A local licensing authority need not write a decision rivaling <u>War and Peace</u>[4] in length, but its decision must still address the salient reasoning for the denial of a license.  In doing so, the necessary findings to support the determination must be made, and "[t]hose findings must, of course, be factual rather than conclusional."  <u>Bernuth v. Zoning Board of Review of New Shoreham</u>, 770 A.2d 396, 401 (R.I. 2001) (quoting <u>Irish Partnership v. Rommel</u>, 518 A.2d 356, 358 (R.I. 1986)).  Further, when there is a "fail[ure] to state findings of fact, the court will not search the record for supporting evidence or decide for itself what is proper in the circumstances."  <u>Id.</u> (quoting <u>Irish Partnership</u>, 518 A.2d at 359).  It is imperative that the local authority acts as a "finder of fact, not a master of puppets."  <u>Mosby</u>, 851 A.2d at 1050.

> In its entirety, Tavares's denial letter stated:
>
> "This letter will serve as official noticed [<u>sic</u>] that your application for license to carry a concealable weapon has been denied.  Your disqualification was based upon the fact that you failed to show good reason to fear an injury to yourself or property.  You failed to show a proper reason for carrying a pistol or revolver that would allow me to issue you a license to carry a concealable firearm.
>
> "Based upon the above mentioned reasons, coupled with the fact that you have previously engaged in criminal behavior that resulted in your arrest, I do not find you, at this time, a suitable person to be issued a license to carry a concealable weapon."

The statements that Gadomski failed to show a good reason to fear injury and failed to show a proper reason[5] for carrying a pistol or revolver are nothing "more than the recital of a litany."

---

[4] First published in 1869, Leo Tolstoy's classic is commonly regarded as one of the greatest pieces of literature and has also garnered significant notoriety for being one of the longest works of all time.

[5] Additionally, it should be noted that in <u>Mosby v. Devine</u>, 851 A.2d 1031, 1047 (R.I. 2004), after observing that the petitioner held "several gun licenses from other states" and was "[a]n avid gun collector," we stated that the petitioner "ha[d] a proper reason for carrying a pistol or revolver."  Therefore, it appears that Gadomski, who also has gun licenses from other states and is a licensed gun collector, may have proffered at least one proper reason under the statute.

Bernuth, 770 A.2d at 401 (quoting Irish Partnership, 518 A.2d at 358-59). Such bare, rote conclusions are insufficient.

While Tavares's denial letter refers, albeit in a perfunctory manner, to the components of § 11-47-11, there appears to have been error in respondent's underlying analysis. As conceded by respondent's counsel at oral argument, an incorrect standard was utilized in conducting the review of petitioner's application. Indeed, a perusal of East Providence's written policy on the carrying of weapons reveals that it is an inappropriate amalgamation of §§ 11-47-11 and 11-47-18. As we have said, "[t]wo separate and distinct licensing procedures are set forth in the Firearms Act." Mosby, 851 A.2d at 1047. Yet, the policy asserts that an applicant must demonstrate a proper showing of need and lists verbatim the same factors that are considered by the Attorney General in assessing whether an applicant has made such a showing of need. Demonstration of a proper showing of need, which is a requirement under § 11-47-18, is not a component of § 11-47-11.

Additionally, on appeal, respondent avers that petitioner is unsuitable, contending that petitioner was untruthful in his application regarding his reasons for seeking a permit. The respondent alleges that he questioned Gadomski's employment supervisor, who indicated that concealed weapons are not required for petitioner's work and that no other employee carries a concealed weapon. However, no documentation of this questioning can be found in the record. Further, we must note that petitioner's written application does not assert that a concealed weapon was required for his work. Rather, the application expresses petitioner's desire to have a concealed weapon for certain reasons, which happen to include two work-related reasons. Moreover, petitioner's application also includes three nonwork-related reasons why petitioner wants a concealed weapon permit.

Lastly, the respondent asserts that the determination that Gadomski is unsuitable is bolstered by what the respondent has characterized as the petitioner having "engaged in criminal behavior that resulted in [the petitioner's] arrest." The petitioner asserts that any consideration of his misdemeanor charges, which were ultimately dismissed, was erroneous, arguing that no conclusions may be drawn from a mere arrest in the absence of a subsequent conviction. The respondent concedes that the existence of the charges, by themselves, would not render an applicant unsuitable, but still argues that the petitioner has failed to provide sufficient supplementary documentation explaining or mitigating the charges. The record, which contains a copy of the petitioner's CORI report indicating that the charges were dismissed close to a quarter-century ago, belies this argument. Given the remoteness of the matters, the nature of the charges (especially the first), the petitioner's forthright disclosure in his application, and the ultimate disposition of the cases, the denial could not properly be predicated on these events.

## IV

### Conclusion

Accordingly, for the reasons set forth in this opinion, the petition for writ of certiorari is granted and the respondent's decision denying the petitioner's application for a license to carry a concealed weapon is quashed. Additionally, the respondent, or his successor, is directed to issue a new decision on the petitioner's application within ninety days of the date of this opinion and to set forth therein the findings and conclusions upon which the decision is based. The new decision should take into account any supplemental material that was submitted in connection with the application. This Court holds that if the petitioner is aggrieved by the new decision, he may file an amended petition for writ of certiorari within sixty days of the issuance of the decision. In that event, no additional filing fee will be required.



**RHODE ISLAND SUPREME COURT CLERK'S OFFICE**

*Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:**   Norman T. Gadomski, Jr. v. Joseph H. Tavares, Chief of Police for the City of East Providence.

**CASE NO:**   No. 2014-72-M.P.

**COURT:**   Supreme Court

**DATE OPINION FILED:**   April 22, 2015

**JUSTICES:**   Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**   Associate Justice Gilbert V. Indeglia

**SOURCE OF APPEAL:**   N/A

**JUDGE FROM LOWER COURT**:

N/A

**ATTORNEYS ON APPEAL:**

For Petitioner:  David J. Strachman, Esq.

For Respondent:  Robert E. Craven, Esq.